# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

DANA DUGGAN, *individually and on behalf of persons similarly situated*,

     *Plaintiff,*

  *v.*

BIG PICTURE LOANS, LLC, MATT MARTORELLO, ASCENSION TECHNOLOGIES, LLC F/K/A BELLICOSE CAPITAL, LLC,

     *Defendants.*

No. 1:18-cv-12277-JGD

## PLAINTIFF'S OPPOSITION TO BIG PICTURE AND ASCENSION'S MOTION TO STAY DISCOVERY AND FOR PROTECTIVE ORDER

Plaintiff, Dana Duggan, hereby files her opposition to Defendants Big Picture Loans, LLC ("Big Picture") and Ascension Technologies, LLC's ("Ascension") Motion to Stay Discovery and for Protective Order (ECF 45).

## MEMORANDUM OF REASONS

## I.    INTRODUCTION

Big Picture and Ascension[1] are well aware that their sovereign immunity defense cannot withstand a full record and judicial scrutiny; with the insights resulting from jurisdictional

---

[1] Because of an agreement reached between Plaintiff and Defendant Matt Martorello, this dispute over jurisdictional discovery is only with Big Picture and Ascension. In contrast to Big Picture's and Ascension's refusals to produce the same record in *Williams*, Defendant Martorello has agreed to produce all of the documents that he has produced in the *Williams* litigation. Also, he has agreed to tender the two transcripts of his deposition testimony from *Williams*. Finally, Plaintiff and Martorello have agreed to revisit the possible need for further discovery and/or deposition testimony after Plaintiff reviews Martorello's discovery in *Williams*. Based on this agreement, Plaintiff has withdrawn the proposed written discovery that was served on Martorello. (See ECF 48-5.) Because Martorello is not the subject of Big Picture and Ascension's Motion to Stay Discovery and for Protective Order, Plaintiff hereafter refers to just Big Picture and Ascension as

discovery, the Eastern District of Virginia has already denied sovereign immunity motions by these same Defendants.[2] Concluding that these Defendants are not "arms of the Tribe,"[3] the *Williams* court relied on an extensive record, including documents and deposition testimony, much of which were filed in redacted form or under seal.[4]

Big Picture and Ascension now refuse to produce the same or similar documents and evidence to Plaintiff in this case or participate in jurisdictional discovery in hopes that an incomplete record might lead to a different result. Defendants' similar efforts to prevent the creation of an informed record have failed in every jurisdiction in which Defendants have made these arguments – the Eastern District of Virginia, the Northern District of California, and the District of Oregon. Each of those courts has ordered Big Picture and Ascension to participate in jurisdictional discovery. This Court should also follow the majority of on-point authorities which have held that jurisdictional discovery should be conducted before extending the "strong tonic"[5] of a Native American tribe's sovereign immunity to a for-profit business that may or may not truly serve tribal self-government purposes.[6]

Plaintiff's requests for limited jurisdictional discovery over a short period of time are reasonable.  Plaintiff only seeks to test the disputed facts that Big Picture and Ascension have asserted in their sovereign immunity motions, including the deposition testimony of their

---

"Defendants" for purposes of this Opposition.

[2] *Williams v. Big Picture Loans, LLC*, 329 F. Supp. 3d 248, 283 (2018).

[3] The tribe at issue is the Lac Vieux Desert Band of Lake Superior Chippewa Indians ("the Tribe").

[4] *Id.* at 253-66.

[5] *People ex rel. Owen v. Miami Nation Enterprises*, 211 Cal. Rptr. 837, 386 P.3d 357, 371 (Cal. 2016).

[6] *See Finn v. Great Plains Lending, LLC*, 689 Fed. App'x 608, 610–11 (10th Cir. 2017) (reversing denial of jurisdictional discovery into arm-of-the-tribe factors); *U.S. v. Salish Kootenai College,* 862 F.3d 939, 944–45 (9th Cir. 2017) (remanding action for discovery on arm-of-the-tribe factors); *Gibbs v. Plain Green, LLC*, 331 F.Supp.3d 518, 529-33 (E.D. Va. 2018) (granting jurisdictional discovery into arm-of-the-tribe factors).

declarants and the documents related to the formation and business practices of the subject companies.  The requested documents and information are pivotal to the dispute on Defendants' sovereign immunity defense.  For the reasons stated below as well as the arguments addressed in Plaintiff's Motion for Jurisdictional Discovery (ECF 47, 48), this Court should reach the same conclusions as the Eastern District of Virginia, the Northern District of California, and the District of Oregon and grant Plaintiff the opportunity to conduct jurisdictional discovery.

## II.   FACTUAL BACKGROUND

Since approximately 2011, Big Picture, Ascension, and their predecessors in interest have been involved in a complex shell game attempting to use tribal sovereign immunity to shield their illegal lending enterprise from state and federal lending laws while enriching nontribal members. Defendant Martorello was the mastermind of these companies' enterprise, and he continues to reap the majority of the profits from the exploitation of desperate or unsophisticated borrowers. Based on the current configuration of the business entities, Big Picture offers short-term loans to Massachusetts residents at extremely high interest rates, often exceeding 500%, through its website and in conjunction with Ascension's national marketing campaign and customer acquisition services, which take place outside of the Tribal lands.

In its opinion in *Williams*, the Eastern District of Virginia provided a detailed history of the lending operations.[7] Likewise, Big Picture and Ascension have acknowledged in their sovereign immunity motions that the history of the subject lending operations dates back to 2011. (ECF 28 at 3-8; ECF 30 at 3-5.) Before Big Picture was formed, Bellicose Capital, LLC ("Bellicose"), a company in which Martorello had a significant ownership stake, provided marketing, underwriting, and related services to another lending entity that the Tribe had created, Red Rock Lending, LLC ("Red Rock"). Then, beginning in the fall of 2015, in an apparent effort to insulate it from liability for its usurious business practices, Bellicose was purportedly purchased

---

[7] *Williams*, 329 F. Supp. 3d at 253-66.

by a separate tribal entity, Tribal Acquisition Company, LLC ("TAC"). TAC dissolved after transferring control of Bellicose to another tribal entity, Tribal Economic Development Holdings, Inc. ("TED").   As part of these transactions, TED and another company, which is managed by a separate entity of which Martorello is president, entered into a note requiring variable payments of up to $300 million to Martorello's company over the course of a seven-year term based on the future revenue of Big Picture. Following these transactions, Ascension assumed the employees and operations of Bellicose operating off of the Tribe's reservations.   Meanwhile, Big Picture assumed the loans made by Red Rock and began making loans based on Ascension's marketing, analytics, and other services.   As addressed below, the intent and purpose of these entities is particularly relevant to the Court's considerations of whether Big Picture's and/or Ascension's operations are subject to a sovereign immunity defense.

## III.   PROCEDURAL HISTORY

### A.  Subject Litigation

Plaintiff in the subject litigation seeks certification of a class action for Massachusetts residents based on Defendants' violations of RICO and Massachusetts's aggressive statutory protection of its residents against unlicensed lending practices at usurious interest rates. Defendants do not dispute that their lending at rates exceeding 500% interest are a violation of state laws, but they have instead filed a series of dispositive motions attempting to avoid this Court's jurisdiction to enforce state and federal lending laws.

In advance of the Defendants' appearances in this case, the parties' counsel worked out a plan to address Defendants' anticipated dispositive motions as well as the parties' dispute on jurisdictional discovery. As addressed in their Stipulated Motion for Extension of Page Limits and Scheduling Order (Dkt. 22), the parties were successful in their negotiation of a stay on the motion practice associated with Defendants' personal jurisdiction motions (Dkts. 25 and 33) and Defendants Big Picture's and Ascension's motion to dismiss based on the doctrine of tribal exhaustion and *forum non conveniens* (Dkt. 31).   The Court granted the stipulation and stay of briefing those motions.  (Dkts. 22 and 23.)  The stipulation limited the parties and this Court's

focus to Big Picture's and Ascension's motions alleging sovereign immunity (Dkts. 27 and 29) as well as the current dispute on jurisdictional discovery. The deadlines for Plaintiff's responses to Defendants' motions are currently stayed pursuant to the parties' agreement and this Court's Order. (Dkts. 22 and 23.)

In accordance with the parties' stipulation to work out a plan for jurisdictional discovery (Dkt. 22), Plaintiff served discovery requests that address the scope of jurisdictional discovery. (ECF 48-4.) As detailed below, the discovery requests are reasonably limited to address Big Picture's and Ascension's jurisdictional defenses. Despite efforts to negotiate a framework for jurisdictional discovery, the parties have been unable to work out an agreement on the scope of such discovery.  (ECF 48-6, 48-7, 48-8.)

## B. *Williams* Litigation Granted Jurisdictional Discovery

The U.S. District Court for the Eastern District of Virginia has reviewed Defendants' defenses and found that these same defendants are <u>not</u> entitled to claim sovereign immunity as a defense to consumers' usury and RICO claims.[8] After the defendants in *Williams* indicated that they would seek dismissal of the Complaint for lack of subject matter jurisdiction and personal jurisdiction, among other grounds, the Court ordered the parties to conduct jurisdictional discovery.[9] Though now opposing jurisdictional discovery, Defendants conceded jurisdictional discovery in *Williams.* For example, Martorello's counsel conceded that plaintiffs were permitted to subpoena third parties as a part of jurisdictional discovery.[10]

Based on a full record afforded by jurisdictional discovery showing how the Defendants "operate in practice," the Eastern District of Virginia in *Williams* found that, despite nominally

---

[8] *Williams*, 329 F. Supp. 3d at 283.

[9] Sept. 1, 2017 Order (Dkt. 17), Docket No. 3:17–cv–461 (E.D. Va.).

[10] See *Williams v. Big Picture Loans, LLC*, 303 F. Supp. 3d 434, 441 (E.D. Va. 2018), citing Oct. 16, 2017 Transcript at 23:20–22 (ECF 48) ("[I]t's perfectly all right to use any procedural vehicle authorized by the Federal Rules of Civil Procedure in pursuit of the discovery about a jurisdictional issue ....").

being dedicated to promote the Tribe's self-determination and economic development, "a closer look reveals that neither Big Picture nor Ascension fulfills those goals very well, if at all."[11] In its consideration and denial of Defendants' sovereign immunity motions, the Eastern District of Virginia provided a detailed recitation of the complexities and underlying facts.[12]

## C. *Cumming* Litigation Granted Jurisdictional Discovery

The Defendants in this case are also litigating the same issues in the Northern District of California in *Cumming v. Big Picture Loans, LLC.* Case No. 5:18-cv-03476-EJD (N.D. Cal.). In *Cumming*, Defendants contested the need for jurisdictional discovery and lost.  In November 2018, that court held that "Plaintiffs have satisfied their burden to demonstrate a need for jurisdictional discovery" based on the following considerations: "(1) there is a critical factual controversy affecting the court's subject matter jurisdiction, (2) the *Breakthrough* factors require a particular factual showing beyond the typical jurisdictional issue, (3) the information relevant to the *Breakthrough* factors appears uniquely within Defendants' control and not easily available from public sources, and (4) Defendants have already been ordered to produce comparable information under similar circumstances." (ECF 48-2.)  On March 13, 2019, the Northern District of California addressed the specifics of the jurisdictional discovery and ordered (1) the parties to participate in roughly 90 days of jurisdictional discovery; (2) Big Picture and Ascension to respond to written discovery and produce responsive documents within 30 days of the court's order; (3) Big Picture and Ascension to tender Michelle Hazen, James Williams, Jr., and one other witness for deposition; (4) Big Picture and Ascension to produce unredacted briefs, exhibits, and documents cited in the *Williams* opinion; (5) the parties to file a discovery status report and appear for a telephonic discovery status conference; and (6) that the plaintiffs may move for further jurisdictional discovery, if needed.  (ECF 46-2.)

---

[11] *Williams*, 329 F. Supp. 3d at 282.

[12] *Id.* at 253–66.

### D. *Galloway* Litigation Granted Jurisdictional Discovery

Big Picture and Ascension are also litigating similar class action claims and causes of action under several states' laws in *Galloway v. Big Picture Loans, LLC*. Case No. 3:18-cv-0406 (E.D. Va.). The *Galloway* court also granted plaintiffs the opportunity for jurisdictional discovery. (ECF 48-3.) Specifically, the court ordered that (1) all jurisdictional discovery completed in the *Williams* case may be used in *Galloway*; (2) plaintiffs may serve additional written discovery; and (3) plaintiffs may notice the depositions of additional witnesses, in addition to the transcripts obtained from the *Williams* litigation. (*Id.*)

### E. *Smith* Litigation Granted Jurisdictional Discovery

In the District of Oregon, Big Picture and Ascension are also litigating Oregon borrowers' class action claims in *Smith v. Big Picture Loans, LLC*. Case No. 3:18-CV-01651-AC (D. Or.). At a hearing on March 19, 2019, the magistrate in *Smith* ordered the parties to proceed with jurisdictional discovery. (Exhibit A at 22-28 to Declaration of John B. Scofield, Jr.) Specifically, the court ordered (1) Big Picture and Ascension to produce the deposition transcripts of Michelle Hazen, James Williams, Jr., and Martin Giiwegiizhigookway from the *Williams* litigation; (2) Big Picture and Ascension to produce unredacted copies of all documents used as exhibits in the sovereign immunity motions in *Williams* and *Smith* as well as all documents cited by the *Williams* court in denying Defendants' sovereign immunity motions; (3) the parties to confer on additional written discovery and depositions after plaintiff reviews the transcripts and unredacted documents; and (4) that, if the parties cannot agree on further discovery, the plaintiff may move for further jurisdictional discovery, if needed. (*Id.*)[13]

---

[13] In addition to the cases cited above, a motion for jurisdictional discovery is pending in *McKoy v. Big Picture Loans, LLC*, Case No. 1:18-cv-03217-MLB, ECF 51 (N.D. Ga).

# IV.   ARGUMENT AND AUTHORITIES

## A. Jurisdictional Discovery Is Necessary and Appropriate

### 1. Courts have consistently ordered Big Picture and Ascension to participate in jurisdictional discovery.

As detailed in Section III, *supra*, courts across the country have considered Big Picture's and Ascension's requests to stay jurisdictional discovery. Every court has ruled that jurisdictional discovery is necessary and appropriate under the same facts as present here. Each court has handled such discovery in different ways, but all have reached the same conclusion: jurisdictional discovery is warranted. The relief requested in Plaintiffs' Motion for Jurisdictional Discovery (ECF 47, 48) is consistent with the courts' holdings in *Williams*, *Cumming*, and *Galloway*. Also, although the *Smith* court did not order Defendants to answer pending written discovery or to tender witnesses for deposition, that court set aside 90 days for the possibility of such discovery and ordered the parties to work together on further discovery and, if no agreement can be reached, present specific discovery requests to the court.

### 2. Jurisdictional discovery is necessary for fair development of the record.

Discovery under the Federal Rules of Civil Procedure is generous in scope and freely permitted, and district courts "have broad discretion in [their] resolution of discovery problems that arise in cases pending before [them]."[14] Generally, the service and scope of jurisdictional discovery are subject to this Court's discretion.[15] However, a refusal to grant jurisdictional

---

[14] *Mylan Labs., Inc. v. Akzo*, N.V., 2 F.3d 56, 64 (4th Cir. 1993) (alterations in original) (quoting *In re Multi–Piece Rim Prods. Liab. Litig.*, 653 F.2d 671, 679 (D.C. Cir. 1981)).

[15] *Finn*, 689 F. App'x at 610, citing *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002). *See also Endurance Am. Specialty Ins. Co. v. Northland Investment Corp.*, No. 18-10724-FDS, 2018 WL 2994405 *1 (D. Mass. June 14, 2018) (finding that jurisdictional discovery on subject matter jurisdiction dispute "would appear to be appropriate" and ordering parties to confer); *Reyes-Morales v. Hospital General Menonita, Inc.*, No. 12-1018 (JAF), 2013 WL 1089752 *3 (D. P.R. March 15, 2013) (deferring ruling on subject matter jurisdiction challenge until the parties had an opportunity to conduct merits and jurisdictional discovery); *Strahan v. Roughead*, No. 08-cv-10919-MLW, 2010 WL 4827880 *4 (D. Mass. Nov. 22, 2010) (granting motion for jurisdictional discovery and denying motion to dismiss for lack of subject

discovery constitutes an abuse of discretion "where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary."[16]

The Court should order that jurisdictional discovery proceed to give Plaintiff the opportunity "to verify allegations of specific facts crucial to an immunity determination."[17] Jurisdictional discovery is warranted when the facts necessary to resolve the jurisdictional inquiry are unknown or disputed.[18] "[S]overeign immunity is a 'critical preliminary determination' of subject matter jurisdiction for which the parties should be granted a fair opportunity to engage in jurisdictional discovery so as to adequately define and submit to the court facts necessary for a thorough consideration of the issue."[19] Jurisdictional discovery is warranted in this case, because

---

matter jurisdiction without prejudice); *Faura Cirino v. U.S.*, 210 F. Supp. 2d 46, 50 (D. P.R. 2002), quoting *Valentin v. Hospital Bella Vista*, 254 F.3d 358, 262-63 (1st Cir. 2001) (holding that, where there is a factual challenge to the court's jurisdiction, the court "enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction").

[16] *Finn,* 689 F. App'x. at 610 (citations and internal quotations omitted). *See also Cirino-Encarnación v. Concilio de Salud Integral de Loíza, Inc.*, 317 F.3d 69, 71-72 (1st Cir. 2003) (holding that jurisdictional discovery should have been answered before ruling on challenge to subject matter jurisdiction); *Brown v. U.S.*, No. 11-40224-TSH, 2012 WL 2886606 *1 (D. Mass. July 12, 2012) (holding that plaintiff should be permitted a 90-day period to conduct jurisdictional discovery to establish subject matter jurisdiction and denying defendants' motions to dismiss without prejudice).

[17] *Furry v. Miccosukee Tribe of Indians of Fla.*, No. 10–24524–CIV, 2011 WL 1303281 *2 (S.D. Fla. March 31, 2011) (quoting *Butler v. Sukhoi Co.*, 579 F.3d 1307, 1312 (11th Cir.2009)); *see also Lovelett v. State of Wa.*, Case No. C16-5922 BHS, 2018 WL 993972 (W.D. Wa. Feb. 21, 2018) (finding "limited discovery is warranted because open questions remain" about the application of tribal sovereign immunity); *Licea v. Curacao Drydock Co., Inc.*, 870 F. Supp. 2d 1360, 1368 (S.D. Fla. 2012) (finding jurisdictional discovery appropriate to address claims of sovereign immunity).

[18] *Viasystems, Inc. v. EBM-Pabst St. Georgen GMBH & Co., KG*, 646 F.3d 589, 598 (8th Cir. 2011).

[19] *Fed. Ins. Co. v. Richard I. Rubin & Co., Inc.*, 12 F.3d 1270, 1285, n.11 (3rd Cir. 1993) (quoting *Gould, Inc. v. Pechiney Ugine Kuhlmann*, 853 F.2d 445, 451 (6th Cir. 1988)). The plaintiff is "generally entitled to a 'fair opportunity' to conduct jurisdictional discovery." *Donovan v. Liberty Mut. Ins. Co.*, Case No: 6:16-cv-157-Orl-22TBS, 2016 WL 890086 *2 (M.D. Fla. March 9, 2016) (citing *Rose v. Cont'l Aktiengesellscharft (AG)*, No. Civ.A. 99-3794, 2001 WL 236738, at *4 (E.D.

Plaintiff has "alleged facts in [her] complaint, which if substantiated through discovery, could assist the Court in determining" the application of sovereign immunity and this Court's jurisdiction.[20]   Plaintiff has raised "specific and substantive allegations" against Big Picture and Ascension, which "justify jurisdictional discovery to determine whether Defendants share in the [Tribe's] sovereign immunity."[21]  In fact, the Eastern District of Virginia has already reviewed the Defendants' arguments in this case, granted jurisdictional discovery, and denied Defendants' motions to dismiss.[22]  "Limited jurisdictional discovery, therefore, will not undermine the principles of sovereign immunity."[23]

### 3.  Plaintiff has demonstrated an entitlement to jurisdictional discovery.

Defendants acknowledge that Plaintiff may be entitled to jurisdictional discovery if she can "sketch, at least in outline form, the rudiments of a viable claim."  (ECF 46 at 6 (citations omitted).)  Plaintiff has more than met this burden in her lengthy complaint.  In fact, Defendants admit that "she may have 'the rudiments of a viable claim.'"  (*Id*. at 7.)  Further, and perhaps more importantly, the Eastern District of Virginia has already upheld the viability of the claim by finding that Defendants are not "arms of the tribe" sharing in its sovereign immunity. *Williams*, 329 F.

---

Pa., Mar. 2, 2001)); *see also Gibbs*, 331 F. Supp. 3d at 532 (granting motion for jurisdictional discovery of tribally affiliated payday lender, holding that "Plaintiffs' specific and substantive allegations against Defendants justify jurisdictional discovery to determine whether Defendants share in the Tribes' sovereign immunity").

[20] *Furry*, 2011 WL 1303281 *3.

[21] *Gibbs*, 331 F. Supp. 3d at 532. See also *In People ex rel. Owen*, 386 P.3d at 365 (holding that the court should take "into account both formal and functional considerations—in other words, not only the legal or organizational relationship between the tribe and the entity, but also the practical operation of the entity in relation to the tribe;" "it is important to carefully examine how such arrangements function as a practical matter, lest we expand the application of tribal immunity beyond its established rationales and indeed beyond 'common sense'").

[22] *Williams*, 329 F. Supp. 3d at 283.

[23] *Gibbs*, 331 F. Supp. 3d at 532.

Supp. 3d at 283.  The Eastern District of Virginia's findings should weigh heavily in favor of ordering Big Picture and Ascension to participate in reasonable jurisdictional discovery.

Defendants implicitly concede that jurisdictional discovery may be warranted upon a showing that such discovery is likely to be useful in regard to establishing the jurisdictional facts. (ECF 46 at 6.)  However, in this instance, Defendants assert that the jurisdictional discovery is inappropriate because "Duggan is unable to particularize her requests." (*Id.* at 11.)  That is simply not true.  Plaintiff is not undertaking a "fishing expedition." (*Id.*)  Here, Plaintiff seeks deposition testimony and documents that go to the very heart of Defendants' jurisdictional defenses.  For example, Defendants have relied upon declarations from Michelle Hazen and James Williams, Jr. (ECF 28-3, 28-4, 28-6); Plaintiff requests leave of court to test those witnesses' accounts by taking their depositions and/or reviewing all transcripts of these witnesses.  Also, Defendants and the *Williams* court have relied on redacted documents to address the sovereign immunity defenses (see, *e.g.*, ECF 28-10, 28-17, 28-18, 28-20, 28-21, 28-22, 30-13, 30-15, 30-16, 30-17, and 30-19, all of which were filed as incomplete, redacted documents in this Court); the Court should order the production of the complete documents for use in this case. Additionally, as addressed below and in her Motion for Jurisdictional Discovery, Plaintiff has served proposed discovery requests that are tailored to seek documents and information relevant to Defendants' sovereign immunity defense.

4.  ***Breakthrough* and *White* do not support Big Picture and Ascension's opposition to jurisdictional discovery.**

Big Picture and Ascension rely heavily upon *White* and *Breakthrough* in support of their claims that jurisdictional discovery is inappropriate.  (See, *e.g.*, ECF 46 at 7, 10.)  Neither case supports Defendants' arguments.  In *White v. University of California*, the Ninth Circuit found that there were only "speculative arguments" supporting jurisdictional discovery.[24]  Unlike in *White*, Plaintiff's claims are not based on speculation; the *Williams* court denied the sovereign immunity

---

[24] 765 F.3d 1010, 1025 (9th Cir. 2014).

defense under the exact same facts.  The district court also noted that "some discovery might be appropriate" under other circumstances.[25]   In fact, in more recent cases, the Ninth Circuit has repeatedly concluded that jurisdictional discovery is warranted, remanding cases to district courts with instructions that the courts first undertake a period of jurisdictional discovery.[26] Further, every case that has reviewed the subjects of Defendants' motions have instead ordered that jurisdictional discovery proceed.

The Tenth Circuit's analysis of jurisdictional discovery in *Breakthrough* is equally inapplicable.  Jurisdictional discovery in that case was only sought as an alternative relief to avoid dismissal of the action, and the plaintiff had not shown that it really needed discovery: it did <u>not</u> state which specific documents it would have sought in discovery; at the hearing, it stipulated to admissibility of approximately 71 exhibits; after the hearing, the parties submitted a stipulation on the agreed facts; the plaintiff did not renew its motion for discovery at the evidentiary hearing; and the Tenth Circuit found that the plaintiff had essentially conceded that it had <u>not</u> been prejudiced by lack of discovery.[27] None of those facts are present in this case.  For example, in contrast to *Breakthrough*, where the plaintiffs could not articulate what discovery they needed, Plaintiff in this case has provided a detailed analysis of what she seeks, including the service of proposed written discovery.  Further, the Tenth Circuit has further distinguished *Breakthrough*; since its findings in *Breakthrough*, the Tenth Circuit has reversed a district court for its failure to allow

---

[25] *White v. Univ. of Cal*., No. C 12-01978 RS, 2012 WL 12335354 *7 (N.D. Cal. Oct. 9, 2012), *aff'd* 765 F.3d 1010 (9th Cir. 2014).

[26] *U.S. v. Salish Kootenai College,* 862 F.3d 939, 945 (9th Cir. 2017) (remanding action for "appropriate discovery" on arm-of-the-tribe factors); *Carsten v. Inter-Tribal Council of Nev*., 599 Fed. Appx 659 (9th Cir. 2015) (same).

[27] *Breakthrough Management Group, Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1179, 1189-90 (10th Cir. 2010), *cert. dism'd* 132 S.Ct. 64, 564 U.S. 1061, 180 L.Ed.2d 932 (2011).

jurisdictional discovery.[28]  For these reasons, Big Picture and Ascension's reliance on *White* and *Breakthrough* is misplaced.

**5.  Defendants' self-serving documents are irrelevant to the propriety of allowing jurisdictional discovery in this case.**

Defendants repeatedly refer to the number of their exhibits in support of their motions to dismiss as if the quantity of documents should dictate the need for further discovery or the outcome of their sovereign immunity motions.  (ECF 46 at 2 n.1 and 10-11.)  Defendants' reliance on approximately 30 exhibits for their sovereign immunity motions (after setting aside duplicate exhibits in the two motions, ECF 28 and 30) is irrelevant.  Several of the exhibits are untested, self-serving declarations. (See, *e.g.*, ECF 28-3, 28-4, 28-7, 28-9.)  Defendants concede that their authorities on this issue may have first been preceded by jurisdictional discovery with an unknown "volume of discovery propounded and produced." (ECF 26 at 2 n.1.) Plaintiff should be afforded the same opportunity to bring testimony and records to the attention of this Court.  For example, and most importantly, the Eastern District of Virginia had the benefit of a full record and significantly more than 30 documents at the time that it denied Defendants' sovereign immunity motions on the exact same facts as present here.

**B.  The Scope of Plaintiff's Requested Jurisdictional Discovery Is Reasonable**

**1.  Plaintiff's discovery requests are not overly broad.**

Defendants mischaracterize Plaintiff's specific discovery requests as "exceptionally broad and voluminous," because the requests address eight years of lending history and address the origins of the lending scheme.  (ECF 46 at 2-3.)  As to the scope of jurisdictional discovery, Defendants argue that the Court should "limit discovery to only those issues raised by Big Picture and Ascension in their dispositive motions."  (*Id.* at 3.)  That is exactly what Plaintiff has done here. In their sovereign immunity motions, Defendants delved deep into the eight-year lending history of now-dissolved companies. (ECF 28 at 3-8; ECF 30 at 3-6.) Specifically, Defendants

---

[28] *Finn*, 689 Fed. App'x at 610–11.

relied on documents dating back to 2010 and addressed the business agreements and history of dissolved companies. (See, *e.g.*, ECF 28-4, Red Rock Articles of Organization; ECF 28-10, Oct. 25, 2011 Servicing Agreement between Red Rock and Sourcepoint.) Plaintiff now seeks discovery addressing the formation and business practices of such companies.

   **2.  Plaintiff's proposed jurisdictional discovery relates to the factors that this Court will evaluate for a sovereign immunity determination.**

   Plaintiff's limited discovery requests relate to the factors that courts have considered to evaluate whether companies may shield themselves from responsibility using a tribe's sovereign immunity defense.  The First Circuit has not had an opportunity to identify the operative test for evaluating sovereign immunity based on an alleged "arm of the tribe." In their sovereign immunity motions, Big Picture and Ascension suggest that the Court rely upon the test that was established in *Breakthrough Management Group, Inc.*, 629 F.3d at 1187. (ECF 28 at 15-27; ECF 30 at 12-26.) In *Breakthrough*, the Tenth Circuit began its analysis with two operative questions:

> Does the resulting entity have a distinct nongovernmental character and therefore is not immune, or is it merely an administrative convenience, *i.e.*, a subordinate tribal economic organization, and therefore immune?
>
> . . .
>
> [W]hether the [defendants] are the kinds of tribal entities, analogous to a governmental agency, which should benefit from the defense of sovereign immunity, or whether they are more like commercial business enterprises, instituted solely for the purpose of generating profits from their private owners.[29]

The Tenth Circuit then identified ten considerations that were deemed significant in *Johnson v. Harrah's Kansas Casino Corp.*, No. 04–4142–JAR, 2006 WL 463138 *4 (D. Kan. Feb. 23, 2006):

> Most courts addressing the issue have considered some or all of the following factors: (1) the announced purpose for which the entity was formed; (2) whether the entity was formed to manage or exploit specific tribal resources; (3) whether federal policy designed to protect Indian assets and tribal cultural autonomy is furthered by the extension of sovereign immunity to the entity; (4) whether the

---

[29] 629 F.3d at 1184 (internal quotations, brackets and citations omitted).

entity is organized under the tribe's laws or constitution rather than federal law; (5) whether the entity's purposes are similar to or serve those of the tribal government; (6) whether the entity's governing body is comprised mainly of tribal officials; (7) whether the tribe has legal title or ownership of property used by the entity; (8) whether tribal officials exercise control over the administration or accounting activities of the organization; (9) whether the tribe's governing body has power to dismiss members of the organization's governing body, and (10) whether the entity generates its own revenue, whether a suit against the entity would impact the tribe's fiscal resources, and whether it may bind or obligate tribal funds.[30]

The *Breakthrough* court then outlined its own six-factor test for determining whether an entity was an "arm of the tribe" and entitled to sovereign immunity:

In this case, we conclude that the following factors are helpful in informing our inquiry: (1) the method of creation of the economic entities; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) the tribe's intent with respect to the sharing of its sovereign immunity; and (5) the financial relationship between the tribe and the entities. Furthermore, our analysis also is guided by a sixth factor: the policies underlying tribal sovereign immunity and its connection to tribal economic development, and whether those policies are served by granting immunity to the economic entities.[31]

Plaintiff's discovery requests are limited to jurisdictional issues seeking to demonstrate that the Tribe exercised little, or no, control over Defendants;  corporate operations involved few, if any, tribal members; the Defendants provide little Tribal benefit, while primarily enriching nontribal members; and the Tribe has no financial exposure for the Defendants' illegal operations. The requests focus on:

(1) who initiated conversations with the Tribe, details as to the Tribe's involvement in drafting and negotiating contracts with non-tribal entities, whether tribal members were informed or voted on the decision to start the

---

[30] *Id*. at 1185-86 (noting that the district court had held that "the tenth factor, the financial relationship between the entity and the tribe and whether a judgment against the entity would affect tribal assets, as a threshold determination, just as the Supreme Court of Alaska did in *Runyon ex. Rel. B.R. v. Ass'n of Village Council of Presidents*, 84 P.3d 437 (Alaska 2004.)").

[31] *Id*. at 1187 (citations omitted).

lending enterprises, and similar information regarding the circumstances of
Defendants' formation;

(2)   the extent to which Defendants benefit the Tribe economically, including the
number of jobs Defendants have created for Tribe members, the percentage of
Defendants' profits are purportedly directed to the Tribe, specific policies in
place to distribute revenue among Tribe members, and which parties or
individuals are most enriched by Defendants' lending practices;

(3)   the extent of the Tribe's management of the actual operations of the Tribe, the
degree of control the Tribe exercises over Defendants, and the practical
operation of the Defendants in relation to the Tribe;

(4)   the extent to which the Tribe depends on Defendants for revenue to fund its
governmental function, its support of tribal members, and its search for other
economic development opportunities, as well as the extent to which the tribe
may be liable to satisfy a judgment against Defendants.

(ECF 48-4.) Such requests present a compelling need for jurisdictional discovery.[32] "A more
satisfactory showing regarding the actual workings of [the internet lender] and its financial
relationship with the Tribe is necessary" to determine whether the Defendants share in the Tribe's
sovereign immunity.[33] Even from the face of the *Williams* opinion itself, there remain gaps in the
evidence.[34] Such jurisdictional discovery is warranted for a proper and due consideration of
Defendants' claimed entitlement to sovereign immunity.[35] To provide this Court with the benefit
of a full factual record on which to decide this important issue, the same result is warranted here.

---

[32] *Gibbs*, 331 F. Supp. 3d at 531–33.

[33] *Id*. at 531, quoting *Finn*, 689 F. App'x at 610–11.

[34] *See Williams*, 329 F. Supp. 3d at 281 ("Big Picture has not provided an exact breakdown of
revenue allocation to different tribal services, so it is impossible to discern how the Tribe would
be affected, if at all, if a judgment harmed Big Picture's operations.").

[35] *Gibbs*, 331 F. Supp. 3d at 532–33.

Jurisdictional discovery on these factors are particularly appropriate where, as here, Big Picture and Ascension claim that Plaintiff has the burden to disprove their entitlement to sovereign immunity.  Contrary to Defendants' position on the burden of proof, courts have repeatedly found that for-profit companies yielding massive profits to nontribal members have the burden to prove that they are "arms of the tribe" protected by tribal sovereign immunity.[36] After all, such companies have control over the evidence that proves or disproves whether they share in the Tribe's sovereign immunity. Nevertheless, Big Picture and Ascension claim that Plaintiff has the burden to disprove application of the sovereign immunity defense. (Dkt. 28 at 13-14; Dkt. 30 at 10-11.) At the same time, these Defendants refuse to participate in jurisdictional discovery and instead attempt to shield themselves from discovery that would disprove their right to sovereign immunity. The Court should not permit Big Picture and Ascension to take these inconsistent positions in a blatant effort to avoid a thorough review of the record on sovereign immunity.

### 3. Plaintiff's proposed discovery requests to Big Picture and Ascension seek only the documents in their possession, custody, or control.

Defendants also claim that Plaintiff's written discovery seeks "information from non-parties."  (ECF 46 at 2-3, 5.)  Based on the documents supporting their sovereign immunity motions, Defendants have shown that they have possession or a right of control over tribal resolutions (see, *e.g.*, 28-5, 28-6, 28-8, 28-12, 28-13, 28-15, 28-16, 28-22, 30-3, 30-7, 30-11, 30-14, 30-21), a chart on the eight-year history of tribal resolutions related to lending operations (ECF 28-22, 30-19), tribal council meeting agenda (ECF 28-20) and a monthly report to the tribal council (ECF 28-21). Defendants cannot credibly claim that they do not have possession or control of similar records that Plaintiff has requested.  However, if Defendants choose to take that position, the Court may consider that as an indication that Defendants are not truly an "arm of the tribe."

---

[36] *See e.g., Williams*, 329 F. Supp. 3d at 269-271; *People ex rel. Owen*, 386 P.3d at 365-66.

**4.   There is relatively little burden on Defendants to participate in jurisdictional discovery.**

Defendants claim that the burden and expense of discovery weighs against allowing Plaintiff jurisdictional discovery.  (ECF 46 at 8, 11.) Such a statement rings hollow in this case.  Here, the *Williams* court has already ruled that the Defendants are not entitled to sovereign immunity, so there is little, if any, cause for deference to the interests of these companies.  *Williams*, 329 F. Supp. 3d at 283. Further, Defendants would face negligible burden and expense if they were to simply tender what they already have produced in *Williams*, including the deposition transcripts. Such a production exceeds the scope of what Plaintiff has requested; however, it is the most cost-effective means to produce jurisdictional discovery.  Additionally, Defendants note that the only responsive documents to many of the proposed discovery requests have already been produced (albeit it in a redacted form), so there is no burden associated with those requests.  (ECF 46 at 5.)

**5.   Plaintiff seeks specific discovery to supplement the record.**

Plaintiff seeks discovery of specific information related to Defendants' sovereign immunity defense and fairly seeks to test the factual assertions on which Big Picture's and Ascension's sovereign immunity motions are based. Specifically, Plaintiff served jurisdictional discovery on Defendants, seeking documents relevant to factors that courts have considered relevant to sovereign immunity, including unredacted versions of the evidence that the Eastern District of Virginia considered. (ECF 48-4.)

Plaintiff has requested the opportunity to rely on the prior deposition testimony of the declarants upon whom Defendants rely for their sovereign immunity motions. (*See* Dkts. 28-3, 28-4, 28-7, 28-9, 30-5, 30-6, 30-8, and 30-9.) In support of Big Picture's and Ascension's sovereign immunity motions, Defendants' witnesses, James Williams, Jr., Michelle Hazen, and Matt Martorello, provided declarations that range in length from six to 17 pages. (*Id.*)  The statements should all be tested by deposition testimony.  In fact, each of these witnesses has already been deposed in the *Williams* litigation, and the *Williams* court relied upon deposition testimony from

at least James Williams and Michelle Hazen in issuing its ruling.[37]   Plaintiff has requested the declarants' prior sworn testimony, which undoubtedly addresses issues pertinent to the sovereign immunity motions. Depending on the questioning and responsiveness of the witnesses, the production of the deposition transcripts might obviate the need to depose the witnesses again.

Plaintiff also requests unredacted copies of the documents upon which Defendants and the *Williams* court have relied.  Several of the requests for production to Defendants seek documents that were filed in *Williams* as redacted pleadings or evidentiary support. (*See, e.g.*, ECF 48-4, request for production numbers 1-3, 26, 30, 41, 42.) Additionally, in this case, Defendants rely on numerous documents that have been altered, redacting substantial parts of the documents. (*See, e.g.*, Dkts. 28-10, 28-17, 28-20, 28-21, 28-22, 30-13, 30-15, 30-16, 30-17, and 30-19.)  If such relevant documents are to be relied upon by Defendants, the documents should have been authenticated and produced in their entirety.  If the redactions were made to protect confidential information, Plaintiff has offered to enter into a protective order to maintain the confidentiality of the documents.  Given that Defendants and the *Williams* court have relied on these documents for the sovereign immunity motions, the entirety of the documents should be produced.  Defendants have refused to produce the redacted documents as well as the deposition testimony in this case, even though such discovery would streamline the creation of a thorough record for this Court's efficient consideration of the jurisdictional defenses.

Finally, Plaintiff has requested an opportunity to serve further discovery on an expedited schedule for an additional 90 days, so that they may follow up on any factual issues that may require further development. As previously noted, such discovery may include the depositions of declarants, including James Williams, Jr., Michelle Hazen, and Matt Martorello, as well as the

---

[37] *See, e.g.*, *Williams*, 329 F. Supp. 3d at 272 (finding that Hazen, Big Picture's CEO, could not explain who decided to create Big Picture); *Id.* at 278-79 (finding that the uninvolvement of Williams, Tribal member and "co-manager" of Big Picture and Ascension, demonstrated that his "oversight is narrow in both scope and depth").

custodians of Defendants' records and Ascension president, Brian McFadden. Plaintiff should be afforded an opportunity to test the witnesses' assertions and document production.

WHEREFORE, Plaintiff respectfully requests that the Court deny Big Picture and Ascension's Motion to Stay Discovery and for Protective Order (ECF 45).  Further, as addressed in her Motion for Jurisdictional Discovery (ECF 47, 48), Plaintiff requests that the Court order (1) Big Picture and Ascension to respond to the written discovery that Plaintiff propounded on March 1, 2019 (ECF 48-4) with a deadline of 14 days after the Court rules on this Motion; (2) Defendants to produce the prior deposition testimony from related litigation of the declarants upon whom Defendants rely for their sovereign immunity motions (*see* Dkts. 28-3, 28-4, 28-7, 28-9, 30-5, 30-6, 30-8, and 30-9); (3) Big Picture and Ascension to present their declarants for depositions related to the sovereign immunity disputes; (4) Big Picture and Ascension to produce unredacted copies of the documents upon which they and the *Williams* court have relied (*see, e.g.*, Dkts. 28-10, 28-17, 28-20, 28-21, 28-22, 30-13, 30-15, 30-16, 30-17, and 30-19, all of which have been altered from their original condition); (5) the parties to confer on a protective order for the confidentiality of Defendants' document production and submit the proposed order within 14 days after the Court rules on this Motion; and (6) 90 days for the completion of jurisdictional discovery, which may include other depositions and third-party discovery, after Big Picture and Ascension respond to the first set of written discovery; (7) set the deadline for Plaintiff's response(s) to the motions alleging sovereign immunity for approximately one month after the completion of jurisdictional discovery; and (8) award such other relief as the Court may find just under the circumstances.

Dated:  March 29, 2019                    By: */s/ Michael A. Caddell*
                                               Michael A. Caddell)
                                               mac@caddellchapman.com
    Cynthia B. Chapman
    cbc@caddellchapman.com
    John B. Scofield, Jr.
    jbs@caddellchapman.com
    Amy E. Tabor
    aet@caddellchapman.com
    CADDELL & CHAPMAN
    628 East 9th Street
    Houston, TX 77007-1722
    Telephone: (713) 751-0400
    Facsimile: (713) 751-0906


    */s/ John Roddy*
    John Roddy, BBO # 424240
    jroddy@baileyglasser.com
    Elizabeth Ryan, BBO # 549632
    eryan@baileyglasser.com
    Bailey & Glasser LLP
    99 High Street, Suite 304
    Boston, MA 02110
    (617) 439-6730
    (617) 951-3954 (fax)

    *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on March 29, 2019, I served a true and correct copy of the foregoing document

on the following counsel of record via the Court's CM/ECF System:

Jonathan P. Boughrum
Michael C. Witsch
Richard L. Scheff
ARMSTRONG TEASDALE, LLP
1500 Market Street
12th Floor, East Tower
Philadelphia, PA 19102
Telephone: (484) 222-1316
Email: jboughrum@armstrongteasdale.com
       mwitsch@armstrongteasdale.com
       rlscheff@armstrongteasdale.com

Ian D. Roffman
Michael J. Leard
NUTTER, MCCLENNEN & FISH LLP
Seaport West, 155 Seaport Blvd.
Boston, Massachusetts 02210
Telephone: (617) 439-2000
Fax: (617) 310-9000
Email: iroffman@nutter.com
       mleard@nutter.com

*Attorneys for Defendant Matt Martorello*

Justin A. Gray
Anna Marek Bruty
ROSETTE, LLP
25344 Red Arrow Highway
Mattawan, MI 49071
Telephone: (269) 283-5005
Email: jgray@rosettelaw.com
       abruty@rosettelaw.com

David N. Anthony
Timothy St. George
TROUTMAN SANDERS, LLP
1001 Haxall Point
Richmond, VA 23219
Telephone: (804) 697-5410
Email: david.anthony@troutman.com
       tim.stgeorge@troutman.com

Michael T. Grant
LECLAIRRYAN PLLC
60 State Street, Twenty-Third Floor
Boston, MA 02109
Telephone: (617) 502-8200
Email: michael.grant@leclairryan.com

*Attorneys for Defendants Big Picture Loans,*
*LLC and Ascension Technologies, LLC*

/s/ John B. Scofield, Jr.
John B. Scofield, Jr.