UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DANA DUGGAN, individually and on behalf )
of persons similarly situated, )
 )
        Plaintiff, )
   v. )   CIVIL ACTION
 )   NO. 18-12277-JGD
MATT MARTORELLO and EVENTIDE )
CREDIT ACQUISITIONS, LLC, )
 )
        Defendants. )

## MEMORANDUM OF DECISION AND ORDER ON DEFENDANT'S MOTION TO DISMISS ON THE BASIS OF JUDICIAL ESTOPPEL

September 21, 2021

DEIN, U.S.M.J.

### I. INTRODUCTION

Plaintiff Dana Duggan ("Duggan"), a Massachusetts resident, has brought this putative class action against defendants Matt Martorello ("Martorello") and his company, Eventide Credit Acquisitions, LLC ("Eventide"), alleging that the defendants engaged in an internet-based predatory lending scheme in which they charged Duggan and other consumers unconscionably high interest rates, often exceeding 500%, for short-term loans. According to Duggan, Martorello and Eventide sought to evade state and federal laws prohibiting such usurious lending practices by partnering with the Lac Vieux Desert Band of Lake Superior Chippewa Indians ("LVD" or the "Tribe") to set up a lending entity. Under this so-called "rent-a-tribe" scheme, LVD, through a company known as Big Picture Loans, LLC ("Big Picture Loans"), allegedly acted as the nominal lender while Martorello and Eventide operated and exercised

actual control over the lending business under the cloak of the Tribe's sovereign immunity. The plaintiff claims that this arrangement enabled the defendants to carry out a fraudulent criminal enterprise and enrich themselves by taking advantage of the privileges and immunities available to Native American tribes. By her Second Amended Class Action Complaint, Duggan has asserted claims against Martorello and Eventide for violations of Massachusetts lending, licensing and consumer protection laws, violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 et seq. ("RICO"), unjust enrichment and declaratory judgment. Additionally, Duggan is seeking to certify a class and a subclass of similarly situated borrowers residing in Massachusetts and in other states around the country.

The matter is before the court on "Matt Martorello's Motion to Dismiss Plaintiff's Second Amended Class Action Complaint" (Docket No. 124), as supplemented by separate briefing in which Martorello argues that he is entitled to dismissal pursuant to the doctrine of judicial estoppel (Docket No. 196). This court will issue a separate Memorandum of Decision and Order addressing the arguments raised by Martorello in his original motion to dismiss. The instant Memorandum of Decision and Order addresses Martorello's assertion that judicial estoppel warrants the dismissal of this action because Duggan's participation in a nationwide class action settlement in the matter of Renee Galloway, et al. v. James Williams, Jr. et al., No. 3:19-cv-470 (E.D. Va.) ("Galloway III") is inconsistent with her claims against the defendants in this case. As described below, Martorello has failed to establish that the positions taken by Duggan in the two cases are directly inconsistent, that Duggan persuaded the Galloway III court to accept a position that is at odds with her claims in the instant litigation, or that Duggan will obtain an unfair advantage if the motion to dismiss is denied. Therefore, and for all the reasons

that follow, Martorello's motion to dismiss Duggan's claims on the basis of judicial estoppel is DENIED.

## II.     STATEMENT OF FACTS

The following facts are limited to those that are relevant to Martorello's motion to dismiss on the grounds of judicial estoppel.[1]

### The Instant Litigation

Duggan initiated this action on October 31, 2018 by filing a Class Action Complaint against Martorello, Big Picture Loans and Ascension Technologies, LLC F/K/A Bellicose Capital, LLC ("Ascension"), the company that allegedly handled the day-to-day operations of the defendants' lending business.  (Docket No. 1).  Therein, Duggan alleged that the defendants engaged in an illegal online rent-a-tribe lending scheme that was designed to evade state lending and consumer protection laws and enable the defendants to charge exorbitant interest rates in exchange for short term "payday" loans.  (See id. ¶¶ 1-9).  Duggan further alleged that she fell victim to the defendants' scheme on two separate occasions when she obtained short-term installment loans from Big Picture Loans.  (Id. ¶¶ 6-7, 19-34).  In both instances, Big Picture Loans allegedly failed to inform Duggan that the interest on the loans would exceed 500 percent or that the loan agreement would require Duggan to relinquish her rights under Massachusetts law.  (Id. ¶¶ 6-7, 21-24, 30).  By her original Class Action Complaint, Duggan asserted claims against the defendants, on behalf of herself and other similarly situated Massachusetts borrowers, for violations of RICO, Massachusetts lending, licensing and

---

[1] Additional factual details regarding Duggan's claims can be found in the Second Amended Class Action Complaint (Docket No. 118).

consumer protection laws and state common law. (Id. ¶¶ 108, 115-55). She also brought a claim for a declaratory judgment declaring that certain provisions of the loan agreement used by Big Picture Loans were void and unenforceable. (Id. ¶¶ 115-18).

On July 16, 2019, Duggan filed a First Amended Class Action Complaint. (Docket No. 72). Therein, the plaintiff named Eventide, officers of Big Pictures Loans and Ascension, and members of LVD's Tribal Council as additional defendants in the action. (See id. ¶¶ 21-32). She also set forth additional details regarding the alleged unlawful lending practices and expanded her class action claims to include both a national class and a Massachusetts subclass of borrowers who entered into loan agreements with Big Picture Loans. (See Docket No. 63 ¶ 4 (describing amendments contained in the First Amended Complaint); Docket No. 72 ¶¶ 144-45 (defining proposed class and subclass)). Duggan continued to maintain claims against the defendants for a declaratory judgment as well as alleged violations of RICO, Massachusetts statutory law and state common law. (Docket No. 72 ¶¶ 152-234). As described below, the plaintiff subsequently amended her complaint a second time following a settlement with, and voluntary dismissal of, all the defendants except Martorello and Eventide. At issue is whether, under the doctrine of judicial estoppel, Duggan's participation in the settlement precludes her from pursuing her claims against the defendants in this case.

## The Galloway III Settlement

The instant case is one of several putative class action lawsuits that have been filed against Martorello, his companies, and the Tribe by plaintiffs who claim to have been subjected to the same online predatory lending practices. See Smith v. Martorello, No. 3:18-cv-1651-AC, 2021 WL 1257941, at *1 (D. Or. Jan. 5, 2021) (describing putative class action against

Martorello and Eventide in the District of Oregon and citing related lawsuits pending in the Eastern District of Virginia), adopted as modified, 2021 WL 981491 (D. Or. Mar. 16, 2021). One of those cases, Galloway III, was filed on June 26, 2019 in the Eastern District of Virginia. Galloway III, No. 3:19-cv-470, 2020 WL 4573822, at *4 (E.D. Va. Aug. 7, 2020). "Galloway III [was] a national class action in which the proposed class include[d] all consumers residing within the United States or its territories who executed loan agreements with . . . Big Picture Loans, LLC (including loans assigned to Big Picture Loans, LLC)" from June 22, 2013 to December 20, 2019. Id. at *2 (internal quotations omitted). See also Galloway III, No. 3:19-cv-470, 2020 WL 7482191, at *2 (E.D. Va. Dec. 18, 2020) (defining the "Settlement Class"). It is undisputed that "[t]he allegations and claims asserted in *Galloway III* mirrored those set forth in the related actions (including ... this case)[.]" (Def. Corr. Supp. Mem. (Docket No. 196) at 4; see also Pl. Opp. Mem. (Docket No 197) at 5 (stating that the amended complaint in Galloway III is "[c]ompletely consistent with the allegations and causes of actions here")). However, while Big Picture Loans, Ascension, the Tribe and various tribal officials were named as defendants in that action, Martorello and Eventide were not parties to the Galloway III litigation. (See Def. Ex. 3).[2]

By October 2019, the defendants in Galloway III had reached a settlement as to all claims asserted against them in that case and the related litigation pending against them in the Eastern District of Virginia. See Galloway III, 2020 WL 7482191, at *2. The settlement also resolved claims pending against those defendants in other courts. Galloway III, 2020 WL 4573822, at *2 n.3. (See also Def. Ex. 1 at 1-2). Duggan was a party to the Class Action

---

[2] The defendant's exhibits are attached to Martorello's Corrected Supplemental Memorandum of Law in Further Support of Motion to Dismiss (Docket No. 196).

[5]

Settlement and Release ("Settlement Agreement"), which was executed by counsel acting on her behalf on November 26, 2019. (Def. Ex. 1 at 52). As one of the Named Plaintiffs under the Settlement Agreement, Duggan served as a proposed representative of the Settlement Class. (See Def. Ex. 1 ¶¶ 2.15, 2.25). Martorello and Eventide participated in the settlement negotiations but did not enter into the Settlement Agreement. See Galloway III, 2020 WL 4573822, at *7 (describing attendance by Non-Settling Defendants' lead counsel at formal mediation sessions that took place in July and August 2019); (Def. Ex. 1 ¶ 2.16 (defining "Non-Settling Defendant[s]" as including Martorello and Eventide)). The Galloway III court granted preliminary approval of the Settlement Agreement and preliminarily certified the Settlement Class on December 20, 2019. Galloway III, 2020 WL 7482191, at *3.

### Relevant Provisions of the Settlement Agreement

The Settlement Agreement requires Big Picture Loans and Ascension to create an $8.7 million Settlement Fund by making three cash deposits of $2.9 million within two years following the effective date of the settlement. (See Def. Ex. 1 ¶ 10.1). The purpose of the Fund is to provide "monetary relief for borrowers" in the Settlement Class "who have already paid amounts on their loans in excess of the applicable usury cap." Galloway III, 2020 WL 4573822, at *10. As set forth in the Settlement Agreement, any Settlement Class Member who "(1) repaid his or her loan in full, and also (2) paid more than 2.5 times the original principle (sic) amount of the loan in payments over the life of the loan" is eligible for payments from the Settlement Fund. (See Def. Ex. 1 ¶¶ 2.32, 10.3). Martorello contends that "the Settlement Agreement permits, and effectively requires, Big Picture to continue making and collecting on the same loans that Duggan alleges are unlawful" in this case, in part because the defendants'

[6]

deposits into the Settlement Fund "must come from interest collected from borrowers with loans originated after the December 20, 2019 class end date." (Def. Corr. Supp. Mem. at 6-7). However, the Settlement Agreement is silent with respect to the source of the cash that Big Picture Loans and Ascension will use to establish the Settlement Fund. (Def. Ex. 1 at ¶ 10.1). Moreover, as further detailed below, nothing in the Settlement Agreement authorizes or encourages Big Picture Loans or Ascension to engage in unlawful lending practices after December 20, 2019.

The Settlement Agreement also requires three of the individual Settling Defendants, Simon Liang ("Liang"), James Dowd ("Dowd") and Brian McFadden ("McFadden"), to transfer their equity interests in Eventide to the Settlement Fund. (Id. ¶ 10.2). "Martorello and companies that he controls own[ ] 85.1% of Eventide" and Martorello's brother owns 9.9% of the company. Williams v. Big Picture Loans, LLC, Nos. 3:17cv461, 18cv406, 3:19cv314, 2020 WL 1879675, at *2 (E.D. Va. Apr. 15, 2020). Liang, Dowd and McFadden own the remaining 5%. Id. Eventide loaned LVD $300 million to help start the lending business at issue in Galloway III, this case and the other related actions. See Galloway III, 2020 WL 4573822, at *2. It is undisputed that "Eventide's only asset is a $300 million promissory note owed by the Tribe" and its only function "is to distribute to the owners of Eventide the payments on the note that are made by the Tribe and entities it has created." Williams, 2020 WL 1879675, at *2. Under the Settlement Agreement, Liang, Dowd and McFadden are required to transfer to the Settlement Fund not only their 5% equity stake, but also "their respective interests in future Eventide distributions, if any, received under the Eventide Note[.]" (Def. Ex. 1 ¶ 10.2). Martorello argues that judicial estoppel should preclude Duggan from pursuing her claims against him in this action because

these requirements render Duggan and the Settlement Class "part owners and beneficiaries of an entity"—Eventide—"allegedly engaging in criminal activity." (Def. Corr. Supp. Mem. at 7). As described below, this argument is insufficient to warrant application of the doctrine of judicial estoppel.

In addition to the relief available from the Settlement Fund, the Settlement Agreement "provides for prospective relief for borrowers who have current or defaulted loans." Galloway III, 2020 WL 4573822, at *10. Specifically, the Agreement provides that with respect to loans made between June 22, 2013 and December 20, 2019,

> Big Picture [Loans] and Ascension (1) will not collect more than 2.5 times the original principal amount of the loan in payments over the life of the loan ... (2) will cancel and cease collection of all loans that are more than 210 days in default; and (3) will not sell, transfer, or assign any interest in these charged-off loans and/or future loan proceeds from the charged-off loans.

Id. at *3. (See also Def. Ex. 1 ¶¶ 11.2-11.3). The Agreement contains no such limitations on any loans made after December 20, 2019. (See Def. Ex. 1 ¶¶ 11.1-11.3). Nor does it require changes in the operations or management of the Tribe's lending businesses. (See id.).

The parties to the Settlement Agreement expressly acknowledged that the settlement would not constitute an admission of any wrongdoing or abandonment of any legal defenses on the part of the Settling Defendants, or an agreement or concession by the Plaintiffs or any members of the Settlement Class with respect to the Settling Defendants' defenses, assertions or denials of liability. (See id. ¶¶ 1.6, 3.1-3.5). They also agreed that their execution of the "Settlement Agreement constitutes the settlement and compromise of disputed claims[,] ... is inadmissible as evidence against any Party except to enforce the terms of the Settlement Agreement and is not an admission of fact or law, or as a concession of any wrongdoing,

obligation, or liability on the part of any Party or the Tribe." (Id. ¶ 1.8). Moreover, the Settlement Agreement emphasizes that nothing contained therein should be construed as an admission of liability or waiver of any defenses by the Settling Defendants, or "as an admission or stipulation by Plaintiffs and Class Counsel regarding the [Settling Defendants'] defenses, including the disputed issues of sovereign immunity, the application of state law, and/or the legality of the subject lending practices." (See id. ¶¶ 3.1-3.5).

As the Galloway III court recognized in connection with its approval of the Settlement Agreement, "the settlement has no effect on class members['] claims against the non-Settling Defendants." Galloway III, 2020 WL 7482191, at *10. In fact, the Settlement Agreement contemplates that the Plaintiffs will continue to prosecute their claims against the "Non-Settling Defendants," including Martorello and Eventide. (See id. ¶ 2.16). For example, but without limitation, the Settlement Agreement provides that pending final approval of the settlement by the Galloway III court, "the Parties agree to jointly move the respective Courts for stays of the [related] Actions – including all pending motions and discovery directed to the Parties-- ... with respect to Settling Defendants only. The stay will not apply to the prosecution of claims against the Non-Settling Defendants." (Id. ¶ 5.3). It further provides that "[i]f a class action is certified against a non-Settling Defendant in one or more of the [related] Actions," Big Picture and Ascension will provide, or authorize third parties to provide, sufficient data for Class Counsel to create a class list, distribute funds to class members or effectuate a settlement with the Non-Settling Defendant. (Id. ¶ 6.3). Thus, by entering into the Settlement Agreement, Duggan did not indicate that she intended to abandon her claims against Martorello and Eventide.

[9]

### Duggan's Dismissal of the Settling Defendants

Pursuant to the Settlement Agreement, the parties agreed to consolidate all claims against the Settling Defendants as follows:

> Upon execution of this Settlement Agreement ... Plaintiffs in *Galloway III* shall seek leave to amend their complaint to add the Plaintiffs and the Settling Defendants from the other [related] Actions, after which *Williams, Galloway I, Galloway II, Duggan* and *Smith* shall be voluntarily dismissed as to the Settling Defendants only. The amended complaint in *Galloway III* shall represent a consolidation of the allegations against the Settling Defendants and will name all of the Settling Defendants. The Parties agree to consent to Plaintiffs' request to amend their complaint in *Galloway III* solely for the purpose of effectuating this Settlement.

(Id. ¶ 5.1). In accordance with this provision, Duggan was added as a plaintiff in a First Amended Class Action Complaint that was filed in Galloway III. (Def. Ex. 3). On December 30, 2019, she voluntarily dismissed her claims against the Settling Defendants in the instant action, leaving Martorello and Eventide as the only remaining defendants. (Docket No. 112). On January 15, 2020, Duggan filed a Second Amended Class Action Complaint in this case by which she is continuing to assert claims against Martorello and Eventide, on behalf of herself and similarly situated borrowers in Massachusetts and other states, for violations of Massachusetts lending, licensing and consumer protection laws, violations of RICO, unjust enrichment and declaratory judgment, based on the alleged rent-a-tribe lending scheme. (Docket No. 118).

### Court Approval of the Galloway III Settlement Agreement

On December 18, 2020, the Galloway III court issued an order granting final approval of the class action settlement. Galloway III, No. 3:19-cv-470, 2020 WL 7482191, at *13 (E.D. Va. Dec. 18, 2020). The settlement resolved claims asserted in nine separate cases, including the

instant litigation, against 25 different Settling Defendants.  Id. at *1 & n.2.  In its written decision, the Galloway III court noted that "[t]he settlement does not release the Plaintiffs' claims against Matt Martorello, ... Eventide Credit Acquistions, LLC, ... or any other entities owned, directly or indirectly, by Matt Martorello" and members of his family.  Id. at *1 (internal quotations omitted).   The court specifically acknowledged that Duggan and the other Named Plaintiffs would continue to pursue their claims that Martorello, Eventide and the other Non-Settling Defendants were engaged in a "rent-a-tribe scheme" involving an internet-based lending operation that charged "usurious interest rates in violation of state and federal laws."  See id.

Significantly, nothing in the Galloway III court's decision approving the settlement indicated that the court viewed the settlement as a recognition or concession by the Plaintiffs of the legality of the alleged scheme.  Rather, the Galloway III court emphasized that "[t]he three years of contentious litigation" were "a testament to Class Counsel's belief in the strength of their case given that the Class Counsel team is composed of experienced consumer protection attorneys who are well versed in these issues." Id.at *8.  The court further recognized that despite their confidence in their case, Class Counsel appreciated the "real risks" involved in continuing with the litigation.  Id.  In particular, the court noted that in the related case of Williams v. Big Picture Loans, LLC, 929 F.3d 170, 185 (4th Cir. 2019), the Fourth Circuit Court of Appeals had held "that two of the Settling Defendants, Big Picture and Ascension, [were] entitled to sovereign immunity as arms of the LVD[.]"  Id.  Thus, while the Galloway III plaintiffs argued that "the Fourth Circuit would have decided the issue differently had it had the benefit of a complete record," they appreciated "the risk that the Court would dismiss the

[11]

individual tribal defendants, tribal council members, and the scheme's lenders either for lack of jurisdiction or for lack of sufficient facts supporting liability under RICO." Id. (quotations and citations omitted).

Throughout its decision, the Galloway III court remained focused on whether the proposed settlement was "fair, reasonable, and adequate[,]" as required by Fed. R. Civ. P. 23(e). See id. at **4-13. It did not address or otherwise comment on the plaintiffs' claims against the Non-Settling Defendants. See id. Following its analysis of the relevant factors, the Galloway III court concluded that "the Settlement Agreement is fair, reasonable, and adequate in that it accords significant benefits to the class members." Id. at *13. Accordingly, it ordered that final approval of the settlement be granted. Id.

Additional details relevant to this court's analysis are set forth below where appropriate.

### III. ANALYSIS

#### A. Judicial Estoppel

Martorello has moved to dismiss this action pursuant to the doctrine of judicial estoppel. "As a general matter, the doctrine of judicial estoppel prevents a litigant from pressing a claim that is inconsistent with a position taken by that litigant either in a prior legal proceeding or in an earlier phase of the same legal proceeding." Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 32-33 (1st Cir. 2004) (quoting InterGen N.V. v. Grina, 344 F.3d 134, 144 (1st Cir. 2003)). The primary purpose of the doctrine "is to safeguard the integrity of the courts by preventing parties from improperly manipulating the machinery of the judicial system." Id. at 33. "Consequently, the 'guiding principle of judicial estoppel' is that it should

[12]

apply 'when a litigant is playing fast and loose with the courts, and when intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.'" GE HFS Holdings, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 520 F. Supp. 2d 213, 223 (D. Mass. 2007) (internal punctuation omitted) (quoting Patriot Cinemas, Inc. v. Gen. Cinemas Corp., 834 F.2d 208, 212 (1st Cir. 1987)).

While "[t]he contours of the doctrine are hazy, and there is no mechanical test for determining its applicability[,]" the First Circuit has determined that, "at a minimum, two conditions must be satisfied before judicial estoppel can attach. First, the estopping position and the estopped position must be directly inconsistent, that is, mutually exclusive. Second, the responsible party must have succeeded in persuading a court to accept its prior position." Alt. Sys. Concepts, Inc., 374 F.3d at 33 (internal citations omitted). Additionally, "[w]hile it is not a formal element of a claim of judicial estoppel, courts frequently consider a third factor: absent an estoppel, would the party asserting the inconsistent position derive an unfair advantage? Relatedly, courts often inquire as to whether judicial acceptance of a party's initial position conferred a benefit on that party." Id. (internal citation omitted). Thus, "in a prototypical case, judicial estoppel applies when 'a party has adopted one position, secured a favorable decision, and then taken a contradictory position in search of legal advantage.'" Id. (quoting InterGen N.V., 344 F.3d at 144).

Applying these principles to the instant case compels the conclusion that the doctrine of judicial estoppel does not apply.

[13]

### B. Application of the Doctrine to the Instant Case

#### Absence of Inconsistent Positions

The first inquiry this court must make in determining whether judicial estoppel applies is whether Duggan did, in fact, take one or more positions in Galloway III that are "directly inconsistent" with her positions in the instant case. See id. at 33. Martorello contends that when she entered into the Galloway III Settlement Agreement, Duggan took two positions that contradict her claims in this action. (Def. Corr. Supp. Mem. at 9-10). This court disagrees and finds that there is no direct conflict between Duggan's positions in Galloway III and her positions in this case.

Martorello first argues that under § 11.2 of the Settlement Agreement and the provisions relating to the Settlement Fund, Duggan and the other Named Plaintiffs agreed that Big Picture Loans could continue to originate and collect on loans "charging interest without regard to Massachusetts usury law[.]" (Def. Corr. Supp. Mem. at 9). Section 11.2, entitled "Cap on Collections," provides in relevant part that with respect to borrowers who "have not fully paid off his or her loan under the agreed terms," Big Picture Loans and Ascension "agree to collect no more than 2.5 times the original principal amount of the loan in payments over the life of the loan[.]" (Def. Ex. 1 § 11.2). Martorello contends that this aspect of the Settlement Agreement contradicts Duggan's claims in the present case because "it does not require the Tribe's business to follow Massachusetts law or the laws of any other state." (Def. Corr. Supp. Mem. at 9). He further argues that "[b]ecause the Settlement Agreement [also] requires the Tribal business to make its payments into the settlement fund over a two-year period, the

[14]

Settlement Agreement not only permits, but practically obligates the Tribe's business to continue making and collection on loans" that violate Massachusetts usury laws.  (Id.; see also id. at 7 (asserting that "the Settlement Agreement permits, and effectively requires, Big Picture to continue making and collecting on the same loans that Duggan alleges are unlawful here because it contemplates that the $8.7 million settlement fund will be funded in three separate deposits of $2.9 million over the course of two years *after* the Settlement Agreement gained final approval by the court on December 20, 2020.").  In short, Martorello contends that Duggan's approval of the Settlement Fund amounts to "an admission as to the loans' legality" and undermines her present challenges to the legality of the lending operation.  (See id. at 2).

Martorello's arguments are based on the faulty assumption that the Settlement Agreement permits Big Picture Loans and Ascension to service and collect debts that violate state usury laws.  Nothing in the provisions relating to the Settlement Fund or restrictions on loan collections even addresses such laws.  (See Def. Ex. 1 §§ 10.1-11.3).  By establishing a cap on collections, the Settlement Agreement ensures that borrowers will not be required to pay more than 2.5 times the original principal amount of their loans.  However, it does not compel Big Picture Loans and Ascension to collect that amount if doing so would violate applicable state or federal laws.  Nor does it otherwise authorize them to engage in any illegal activity.  (See id. § 11.2). Similarly, while the Settlement Agreement requires Big Picture Loans and Ascension to establish an $8.7 million Settlement Fund, it does not address the source of the tribal entities' deposits and does not require them to come from the Tribe's lending activities.  (See id. §§ 10.1-10.2).  Furthermore, none of the provisions concerning the Settlement Fund encourage or permit the tribal entities to engage in illegal lending practices, in violation of

[15]

Massachusetts law or the laws of other states.  (See id. §§ 10.1-10.21).  In fact, the Settlement Agreement specifically acknowledges a continuing disagreement between the settling parties regarding the applicability of state law to the Settling Defendants' lending operations.  As § 3.3 of the Settlement Agreement, entitled "No Admission of Applicability or Inapplicability of State Law or State Regulation" provides:

> The Big Picture Defendants, the Tribe, the Individual Tribal Defendants, and the Tribal Officials expressly deny that they – or any of their loans or lending activity – are subject to the laws and/or regulations of any state.  Plaintiffs expressly assert that they—and any of their loans or lending activity – are subject to the laws and/or regulations of their respective states.  Neither this Settlement Agreement nor any document referred to herein, nor any action taken to carry out this Settlement Agreement and/or the Settlement, or the Parties' willingness to enter into this Settlement Agreement, nor any or all negotiations, communications, and discussions associated with the Settlement are, or may be construed as, or may be used in any proceeding as, an admission by or against any Party as to the application of state law and/or state regulation to the Settling Defendants, their loans, or their activities.

(Id. § 3.3).  Martorello's assertion that by entering into the Settlement Agreement, Duggan effectively agreed that Big Picture Loans and Ascension could resume their lending activities, in violation of Massachusetts law, is at odds with the plain language of the Agreement.

Next, Martorello argues that under the terms of the Settlement Agreement relating to the transfer of Liang's, Dowd's and McFadden's interest in Eventide, Duggan has "assum[ed] an ownership interest in Martorello's company, Eventide, in order to share in the note payments that Eventide receives from Big Picture, and that are funded by income from Big Picture's loans."  (Def. Corr. Supp. Mem. at 9).  According to the defendant, this aspect of the Settlement Agreement is inconsistent with Duggan's claims against Eventide in this case because here "she alleges that Eventide, an entity in which she is now a part owner and from whose operations she derives financial benefit pursuant to the Settlement Agreement, is the lynchpin of the

[16]

'illegal business operations' she attacks in this suit." (Id. at 10). This argument too is unpersuasive. As an initial matter, the Settlement Agreement does not give Duggan an ownership interest in Eventide. The Agreement requires Liang, Dowd and McFadden to "transfer to the Settlement Fund their respective Eventide membership interests, including their respective interests in future Eventide distributions, if any received under the Eventide Note[,]" and provides that the Settlement Fund "will be used to make distributions to the Settlement Class Members who submit a Valid Claim" in accordance with a process set forth in the Agreement. (Def. Ex. 1 §§ 10.2-10.3). Additionally, there is nothing inconsistent about Duggan's decision to enter into an agreement under which some alleged wrongdoers agree to disgorge their ill-gotten gains by disclaiming their interests in an allegedly illegal business while continuing to pursue her claims against the majority owner of the business as well as the business itself. Therefore, Martorello has failed to satisfy the first requirement needed to apply judicial estoppel. See New Hampshire v. Maine, 532 U.S. 742, 750, 121 S. Ct. 1808, 1815, 149 L. Ed. 2d 968 (2001) (first factor that must be shown for judicial estoppel to apply in a particular case is that "a party's later position [is] 'clearly inconsistent' with its earlier position" (citations omitted)).

### Adoption of Duggan's Position

In addition to showing a direct inconsistency between a party's prior position and the one she currently espouses, "[t]he party proposing an application of judicial estoppel must show that the relevant court actually accepted the other party's earlier representation." Perry v. Blum, 629 F.3d 1, 11 (1st Cir. 2010).

> "Acceptance" in this context is a term of art. In order to satisfy this prerequisite, a party need not show that the earlier representation led to a favorable ruling on

[17]

the merits of the proceeding in which it was made, but must show that the court adopted and relied on the represented position either in a preliminary matter or as part of a final disposition.

Id. This "showing of judicial acceptance must be a strong one." Id. Thus, "a proponent of judicial estoppel must affirmatively show, by competent evidence or inescapable inference, that the prior court adopted or relied upon the previous inconsistent assertion." Id. at 11-12. Martorello has failed to make the requisite showing.

As described above, the Galloway III court approved the Settlement Agreement after finding that it was "fair, reasonable, and adequate in that it accords significant benefits to the class members." Galloway III, 2020 WL 7482191, at *13. In doing so, the court neither accepted nor "implie[d] any judicial endorsement of either party's claims or theories." Perry, 629 F.3d at 12 (quoting In re Bankvest Capital Corp., 375 F.3d 51, 60 (1st Cir. 2004)). See also In re Bankvest Capital Corp., 375 F.3d at 60 (court's approval of parties' settlement did not constitute acceptance of the plaintiff's legal or factual assertions for purposes of judicial estoppel). More significantly, there is no indication that the court viewed the settlement as a recognition by Duggan and the other Plaintiffs of the legality of the alleged lending scheme, as Martorello argues in support of his motion. (See Def. Corr. Supp. Mem. at 2, 11). The Settlement Agreement specifically provides that nothing therein "should be construed as an admission or stipulation by Plaintiffs and Class Counsel regarding the Released Parties' defenses, including the disputed issues of sovereign immunity, the application of state law, and/or the legality of the subject lending practices." (Def. Ex. 1 § 3.5). Furthermore, as described supra, in its decision approving the Settlement Agreement, the Galloway III court expressly acknowledged "Class Counsel's belief in the strength of their case" against the

[18]

defendants based on the allegedly illegal predatory lending scheme.  Galloway III, 2020 WL 7482191, at *8.  Thus, there is nothing in the record to suggest that Duggan persuaded the Galloway III court to accept a position that is inconsistent with her claims and allegations in the present litigation.

### Equitable Considerations

The First Circuit generally does not require a showing of unfair advantage where the first two elements of the test for judicial estoppel are present.  Guay v. Burack, 677 F.3d 10, 16 (1st Cir. 2012) ("We generally have not required a showing of unfair advantage.").  "Where unfair advantage exists, however, it is a powerful factor in favor of applying the doctrine."  Id. at 16-17.  Here, Martorello has not shown, and this court cannot determine, how Duggan's participation in the Galloway III settlement and her execution of the Settlement Agreement will give her an unfair advantage over the defendants in this case.  Accordingly, the record does not support the conclusion that Duggan is "playing fast and loose with the courts."

As this court has emphasized in an earlier litigation:

> [J]udicial estoppel is an extraordinary remedy to be invoked when a party's inconsistent behavior will otherwise result in a miscarriage of justice.  It is not meant to be a technical defense for litigants seeking to derail potentially meritorious claims, especially when the alleged inconsistency is insignificant a[t] best and there is no evidence of intent to manipulate or mislead the courts. Judicial estoppel is not a sword to be wielded by adversaries unless such tactics are necessary to secure substantial equity.

Ghassemian v. Jefferson Pilot Fin. Ins. Co., No. 02-11392-NG, 2005 WL 8175878, at *6 (internal quotation marks omitted) (quoting Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 365 (3d Cir. 1996)).  Where, as here, there is no evidence of an inconsistency, much less evidence of an intent to manipulate or mislead the courts, there is simply no basis for

[19]

applying the extraordinary remedy of judicial estoppel.  The defendant's motion to dismiss on this basis must be denied.

## IV. CONCLUSION

For all the reasons detailed herein, Martorello has failed to establish that Duggan has taken any positions in this case that are directly inconsistent with the positions she took in Galloway III, that Duggan persuaded the Galloway III court to accept a position that is at odds with her claims in the instant litigation, or that Duggan will obtain an unfair advantage if Martorello's motion to dismiss is denied.  Therefore, Martorello's motion to dismiss Duggan's claims in this action on the basis of judicial estoppel (Docket No. 196) is DENIED.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge