UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DANA DUGGAN, individually and on behalf )
of persons similarly situated, )
 )
    Plaintiff, )
  v. )  CIVIL ACTION
 )  NO. 18-12277-JGD
MATT MARTORELLO and EVENTIDE )
CREDIT ACQUISITIONS, LLC, )
 )
    Defendants. )

# MEMORANDUM OF DECISION AND ORDER ON DEFENDANTS' MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 19

March 30, 2022

DEIN, U.S.M.J.

## I. INTRODUCTION

This is a putative class action in which the plaintiff, Dana Duggan ("Duggan"), claims that the defendants, Matt Martorello ("Martorello") and his company, Eventide Credit Acquisitions, LLC ("Eventide"), engaged in an internet-based predatory lending scheme in which they charged Duggan and other consumers unconscionably high interest rates, often exceeding 500%, for short-term loans. According to Duggan, Martorello and Eventide sought to evade state and federal laws prohibiting usurious lending practices by partnering with the Lac Vieux Desert Band of Lake Superior Chippewa Indians ("LVD" or the "Tribe") to set up a lending entity. Under this so-called "rent-a-tribe" scheme, LVD, through a company known as Big Picture Loans, LLC ("Big Picture Loans"), allegedly acted as the nominal lender while Martorello and Eventide operated and exercised actual control over the lending business under the cloak of the

Tribe's sovereign immunity. Duggan claims that this arrangement enabled the defendants to take advantage of the privileges and immunities available to Native American tribes to carry out their fraudulent enterprise and enrich themselves at the expense of borrowers. By her Second Amended Class Action Complaint, Duggan has asserted claims against Martorello and Eventide for violations of Massachusetts lending, licensing and consumer protection laws, violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 et seq. ("RICO"), unjust enrichment and declaratory judgment. Additionally, Duggan is seeking to certify a class and a subclass of similarly situated borrowers residing in Massachusetts and in other states around the country.

The matter is before the court on "Defendants' Motion to Dismiss Under Federal Rule of Civil Procedure 19" (Docket No. 199). By their motion, the defendants argue that LVD, Big Picture Loans and Ascension Technologies, LLC ("Ascension"), an affiliate of Big Picture Loans, are necessary and indispensable parties to this action pursuant to Rule 19 of the Federal Rules of Civil Procedure. They further argue that LVD, Big Picture Loans and Ascension (collectively, the "Tribal Entities") cannot be joined because they are arms of the Tribe who are protected from suit under the doctrine of sovereign immunity, and that the inability to join indispensable parties warrants the dismissal of this case.

The Tribal Entities are no strangers to this litigation. Either they or their members were previously joined as defendants in this case but were dismissed voluntarily following a settlement with the plaintiff. This court finds that as a result, and for the additional reasons described below, the Tribal Entities cannot be deemed necessary or indispensable parties to this action under Rule 19. Accordingly, the defendants' motion to dismiss is DENIED.

[2]

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Martorello and Eventide have moved to dismiss Duggan's Second Amended Class Action Complaint, pursuant to Fed. R. Civ. P. 19, for failure to join necessary and indispensable parties.[1]  In considering such a motion, the court must "accept the allegations contained in the plaintiff's complaint as true."  Romero v. Clean Harbors Surface Rentals USA, Inc., 368 F. Supp. 3d 152, 158 (D. Mass. 2019) (quoting J & J Sports Prods. Inc. v. Cela, 139 F. Supp. 3d 495, 499 (D. Mass. 2015)).  Additionally, the court "may consider other relevant extra-pleading evidence, such as declarations or affidavits."  Id.  Applying this standard to the instant case, the relevant facts are as follows.

### Duggan's Loan Agreements

This case arose out of two short term loans that the plaintiff received from Big Picture Loans in 2017 and 2018.  The first loan, which Duggan received in October 2017, was for $425 and the second loan, which she received in April 2018, was for $775.  (Compl. ¶¶ 9-10).[2]  The plaintiff obtained the loans after filling out application materials on the internet and speaking with a representative of Big Picture Loans from her home in Massachusetts.  (Id.).  Duggan claims that Big Picture Loans' representative failed to explain the terms of the loans or provide her with an opportunity to review the loan agreement before she digitally signed the agreement and submitted it over the internet.  (Id. ¶¶ 30, 32, 40).  As a result, Duggan was unaware that the interest rate on each of the loans would exceed 500 percent or that the loan

---

[1] Ordinarily, motions to dismiss for failure to join a party under Rule 19 are brought under Rule 12(b)(7), which specifically authorizes a party to file a motion asserting a defense for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7).

[2] "Compl." refers to the plaintiff's Second Amended Class Action Complaint (Docket No. 118).

[3]

agreement contained provisions that allegedly required her to relinquish her rights as a consumer under Massachusetts law.  (Id. ¶¶ 30, 34, 40, 120-21).  Specifically, according to the plaintiff, the loan agreements used by Big Picture Loans, including the agreement that controlled Duggan's loans, contained choice of law, forum selection, class action waiver and dispute resolution provisions that allegedly sought "to disclaim federal and state laws in favor of Tribal law[,]" "deprive[ ] Massachusetts borrowers of *any* forum [in which] to bring state or federal law claims" and violate the borrower's "statutory right to maintain a class action to redress unfair or deceptive acts or practices in accordance with Massachusetts law."[3] (Id. ¶¶ 121-23, 126, 140-41 & Ex. 1 at 5-6 (emphasis in original)).

Duggan claims that she repaid the $425 over the course of six months, with Big Picture Loans deducting $191.52 per month from her bank account during the first five months and deducting $125.62 in the final month.  (Id. ¶¶ 35-36).  Accordingly, the plaintiff's repayments on the first loan totaled $1,083.22.  (Id. ¶ 37).  Prior to filing this lawsuit, Duggan paid a total of $875 on the $775 loan.  (Id. ¶ 42).  Big Picture Loans contends that she owes it at least an additional $719.06 in repayments on that loan.  (Id. ¶¶ 10, 43-45).  Duggan alleges that the interest rate charged on each of her loans was usurious and violated Massachusetts lending laws.  (See id. ¶¶ 9-11).  She also claims that "[t]he Big Picture Loans representative was

---

[3] The choice of law and forum selection provisions of Duggan's loan agreement provide that "[t]his Agreement will be governed by the laws of the [LVD] ('Tribal law'), including but not limited to the Code as well as applicable federal law.  All disputes shall be solely and exclusively resolved pursuant to the Tribal Dispute Resolution Procedure set forth in Section 9 of the Code and summarized below for Your convenience."  (Compl., Ex. 1 at 5).  The dispute resolution provision requires the borrower to submit any complaints arising from the loan agreement to the lender for an investigation and response.  (Id.).  Any appeal from the lender's decision must be submitted to the Tribal Financial Services Regulatory Authority ("Authority") for administrative review and a possible hearing, and any appeal from the Authority's decision must be submitted to the Tribal Court for a final review.  (Id. at 5-6).

operating under the instruction, direction, and/or supervision" of Martorello and Eventide, and that the defendants' conduct violated federal as well as state law. (Id. ¶¶ 11-13, 33, 41).

### The Instant Litigation

Duggan initiated this action on October 31, 2018 by filing a Class Action Complaint against Martorello, Big Picture Loans and Ascension, the company that allegedly handled the day-to-day operations of the defendants' lending business. (Docket No. 1). Therein, Duggan alleged that the defendants engaged in an illegal online "rent-a-tribe" lending scheme that was designed to evade state lending and consumer protection laws and enable the defendants to charge exorbitant interest rates in exchange for short term "payday" loans. (See id. ¶¶ 1-9). Specifically, Duggan describes the scope of the Complaint as follows:

> Payday lenders, such as Big Picture Loans, LLC, claim that they are exempt from usury laws because they are supposedly wholly-owned by a Native American tribe. But the reality is that a complicated corporate management structure masks the fact that non-tribal members reap the overwhelming majority of the profits. The purpose of this litigation is to expose this criminal enterprise that was established with the intent of evading the state lending laws, to return the illegal gains to the exploited borrowers, to obtain statutory damages in accordance with Massachusetts and federal law, and to enjoin the Defendants from collecting on their illegal loans or otherwise continuing their illegal practices with Massachusetts borrowers.

(Id. ¶ 1). According to the Complaint, Martorello used the Tribe "to set up a lending entity supposedly beyond the reach of state and federal licensing and lending laws" while his own company "funded the loans, controlled the underwriting, and handled the day-to-day operations of the business." (Id. ¶ 3). Thus, Duggan asserts that Big Picture Loans was just a "front to disguise Martorello's and his company's roles and to ostensibly shield the scheme by

exploiting tribal sovereign immunity." (Id. ¶ 4). In exchange for allowing Martorello to use its name and status, "the Tribe received about two percent of the revenue from the loans." (Id.).[4]

By her original Class Action Complaint, Duggan asserted claims against the defendants, on behalf of herself and other similarly situated Massachusetts borrowers, for violations of RICO, Massachusetts lending, licensing and consumer protection laws, and state common law. (Id. ¶¶ 108, 115-55). She also brought a claim for a declaratory judgment declaring that the choice of law, forum selection, class action waiver and dispute resolution provisions included in the loan agreement used by Big Picture Loans were void and unenforceable. (Id. ¶¶ 115-18).

On July 16, 2019, Duggan filed a First Amended Class Action Complaint. (Docket No. 72). Therein, the plaintiff named Eventide (Martorello's company), officers of Big Picture Loans and Ascension, and members of LVD's Tribal Council as additional defendants in the action. (See id. ¶¶ 21-32). She also provided additional details regarding the allegedly unlawful lending practices and expanded her class action claims to include both a national class and a Massachusetts subclass of borrowers who entered into loan agreements with Big Picture Loans. (See Docket No. 63 ¶ 4 (describing amendments contained in the First Amended Complaint); Docket No. 72 ¶¶ 144-45 (defining proposed class and subclass)). Duggan continued to maintain claims against the defendants for a declaratory judgment declaring as void and unenforceable the choice of law, forum selection, class action waiver and dispute resolution provisions of Big Picture Loans' loan agreements. (Docket No. 72 ¶¶ 152-56). She also maintained her claims for alleged violations of RICO, Massachusetts statutory law and state

---

[4] The percentage of the revenue that the Tribe received from the loans was subsequently modified so that "the Tribe receives as much as six percent of the gross revenues of the lending enterprise." (Docket No. 118 ¶ 6).

common law.  (Id. ¶¶ 157-234).  Duggan continued to assert that "Martorello was the architect of the rent-a-tribe lending scheme and had direct personal involvement in the creation and day-to-day operations of the illegal enterprise."  (Id. ¶ 19).  She also maintained that "through the creation of separate corporate forms and the execution of various legal documents ... Martorello has attempted to isolate himself and decrease his legal liability, despite the fact that he continues to reap millions of dollars in profits from the predatory lending [practices]."  (Id.).

As described below, the plaintiff subsequently amended her complaint a second time following a settlement with, and voluntary dismissal of, all the defendants except Martorello and Eventide.  At issue is whether, under Rule 19 of the Federal Rules of Civil Procedure, the Tribal Entities are necessary and indispensable parties to this action notwithstanding the fact that they were previously joined as defendants who chose to enter into a settlement with the plaintiff.

### Settlement with the Tribal Entities

The instant case is one of several putative class action lawsuits that have been filed against Martorello, his companies, and the Tribe by plaintiffs who claim to have been subjected to the same online predatory lending practices as Duggan.  See Smith v. Martorello, No. 3:18-cv-1651-AC, 2021 WL 1257941, at *1 (D. Or. Jan. 5, 2021) (describing putative class action against Martorello and Eventide and citing related lawsuits), adopted as modified, 2021 WL 981491 (D. Or. Mar. 16, 2021).  One of those cases, which was filed on June 26, 2019 in the Eastern District of Virginia, was "a national class action in which the proposed class include[d] all consumers residing within the United States or its territories who executed loan agreements with ... Big Picture Loans, LLC (including loans assigned to Big Picture Loans, LLC)" from June 22,

2013 to December 20, 2019.  Galloway v. Williams, No. 3:19-cv-470, 2020 WL 4573822, at **2, 4 (E.D. Va. Aug. 7, 2020) ("Galloway III") (internal quotations omitted).  It is undisputed that the claims and allegations in Galloway III mirrored those asserted by Duggan in the present litigation.  (Docket No. 226 at 5).  However, while Big Picture Loans, Ascension, the Tribe and various tribal officials were named as defendants in Galloway III, Martorello and Eventide were not parties to that action.  (Id.).

By October 2019, the defendants in Galloway III, including the Tribal Entities, reached a settlement as to all claims asserted against them in that case, as well as in related litigation pending against them in the Eastern District of Virginia and in other federal courts.  (Id.).  Duggan was a party to the Class Action Settlement and Release agreement ("Settlement Agreement") and was one of the "Named Plaintiffs" thereunder.  (Id. at 5-6).  The Agreement resolved Duggan's claims against the Tribal Entities in this case.  Galloway III, 2020 WL 4573822, at *2 n.3.  Martorello and Eventide participated in the settlement negotiations but did not enter into the Settlement Agreement.  (Docket No. 226 at 6).  The Galloway III court granted preliminary approval of the Settlement Agreement and preliminarily certified a Settlement Class on December 20, 2019.  Galloway III, 2020 WL 7482191, at *3.

The Settlement Agreement required Big Picture Loans and Ascension to create an $8.7 million Settlement Fund by making three cash deposits of $2.9 million within two years following the effective date of the settlement.  (Settlement Agreement ¶ 10.1).[5]  The purpose of the Fund is to provide "monetary relief for borrowers" in the Settlement Class "who have

---

[5] The Settlement Agreement is attached as Exhibit A to the Defendants' Memorandum of Law in Support of Motion to Dismiss Under Federal Rule of Civil Procedure 19 ("Def. Mem.") (Docket No. 200).

[8]

already paid amounts on their loans in excess of the applicable usury cap." Galloway III, 2020 WL 4573822, at *10.  Thus, under the Settlement Agreement, borrowers who "(1) repaid [their] loan[s] in full, and also (2) paid more than 2.5 times the original principle (sic) amount of the loan in payments over the life of the loan" are eligible for payments from the Settlement Fund.  (Settlement Agreement ¶¶ 2.32, 10.3).  The Agreement also "provides for prospective relief for borrowers who have current or defaulted loans."  Galloway III, 2020 WL 4573822, at *10.  Specifically, the Settlement Agreement provides that with respect to loans made between June 22, 2013 and December 20, 2019,

> Big Picture [Loans] and Ascension (1) will not collect more than 2.5 times the original principal amount of the loan in payments over the life of the loan ...; (2) will cancel and cease collection of all loans that are more than 210 days in default; and (3) will not sell, transfer, or assign any interest in these charged-off loans and/or future loan proceeds from the charged-off loans.

Id. at *3.  (See also Settlement Agreement ¶¶ 11.2-11.3).  However, the Settlement Agreement contains no such limitations on any loans made after December 20, 2019.  (See Settlement Agreement ¶¶ 11.1-11.3).  Moreover, "only class members who affirmatively elect to obtain a cash claim payment release their individual claim (i.e., there is no general class member release for individual damages)."  Galloway III, 2020 WL 7482191, at *10 (internal quotations omitted).

"[T]he settlement [had] no effect on class members['] claims against the non-Settling Defendants."  Id.  In fact, the Settlement Agreement contemplated that the plaintiffs would continue to prosecute their claims against "Non-Settling Defendants," including Martorello and Eventide.  (See Settlement Agreement ¶¶ 2.16, 5.3, 6.3).  It also provided that "[i]f a class action is certified against a non-Settling Defendant in one or more of the [related] Actions," including the instant case, Big Picture Loans and Ascension would provide, or authorize third parties to

provide, sufficient data for Class Counsel to create a class list, distribute funds to class members or effectuate a settlement with the non-Settling Defendant. (Id. ¶ 6.3). Therefore, the Tribal Entities were aware that Duggan would continue to pursue her claims against Martorello and Eventide in this court, and they agreed to assist in that effort.

The Settlement Agreement called for Duggan to dismiss her claims in this action against the Settling Defendants. (Id. ¶ 5.1). Accordingly, on December 30, 2019, Duggan voluntarily dismissed her claims against the Tribal Entities in the instant action, leaving Martorello and Eventide as the only remaining defendants. (Docket No. 112). On January 15, 2020, Duggan filed a Second Amended Class Action Complaint in this case by which she is continuing to assert claims against Martorello and Eventide, on behalf of herself and similarly situated borrowers in Massachusetts and other states, for violations of Massachusetts lending, licensing and consumer protection law, violations of RICO, unjust enrichment and a declaratory judgment declaring the choice of law, forum selection, class action waiver and dispute resolution provisions of Big Picture Loans' loan agreements void and unenforceable. (Compl. ¶¶ 154-226). As in the earlier versions of the Complaint, Duggan continues to assert that Big Picture Loans is just a front for Martorello and his company, and that the affiliation with the Tribe was an attempt to wrongfully circumvent state and federal licensing and lending laws. (See, e.g., id. ¶¶ 1-8).

On December 18, 2020, the Galloway III court issued an order granting final approval of the class action settlement. Galloway III, No. 3:19-cv-470, 2020 WL 7482191, at *13 (E.D. Va. Dec. 18, 2020). The settlement resolved claims asserted in nine separate cases, including the instant litigation, against 25 different Settling Defendants. Id. at *1 & n.2. In its written

[10]

decision, the Galloway III court noted that "[t]he settlement does not release the Plaintiffs' claims against Matt Martorello, ... Eventide Credit Acquistions, LLC, ... or any other entities owned, directly or indirectly, by Matt Martorello" and members of his family. Id. at *1 (internal quotations omitted). The court specifically acknowledged that Duggan and the other Named Plaintiffs would continue to pursue their claims that Martorello, Eventide and the other Non-Settling Defendants were engaged in a "rent-a-tribe scheme" involving an internet-based lending operation that charged "usurious interest rates in violation of state and federal laws." See id.

Additional factual details relevant to this court's analysis are set forth below.

### III.     ANALYSIS

#### A. Standard of Review

The defendants have moved to dismiss Duggan's claims, pursuant to Fed. R. Civ. P. 19, on the grounds that the Tribal Entities "are necessary and indispensable parties to this action, but cannot be joined due to their sovereign immunity." (Def. Mot. (Docket No. 199) at 1). "Rule 19 addresses situations where a lawsuit is proceeding without a party whose interests are central to the suit." Bacardi Int'l Ltd. v. V. Suarez & Co., Inc., 719 F.3d 1, 9 (1st Cir. 2013). It "provides for joinder of required parties when feasible, Fed. R. Civ. P. 19(a), and for dismissal of suits when joinder of a required party is not feasible and that party is indispensable, Fed. R. Civ. P. 19(b)." Id. In determining whether a party is required[6] and indispensable under Rule 19, the

---

[6] Rule 19 "used to refer to a required party as a 'necessary party.'" Barcardi Int'l Ltd., 719 F.3d at 10 n.12. Because the defendants have used the term "necessary party" in their motion and supporting memorandum, this court has used the terms "required party" and "necessary party" interchangeably throughout this Memorandum of Decision and Order.

[11]

court is expected "to make pragmatic, practical judgments that are heavily influenced by the facts" of the specific case.  Id.

The first step in a Rule 19 analysis is to "determine if an absent party is a 'required party' under Rule 19(a)."  Id. at 10.  As Rule 19(a) provides in relevant part:

> (1)     *Required Party*.  A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
> (A)     in that person's absence, the court cannot accord complete relief among existing parties; or
> (B)     that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> (i)     as a practical matter impair or impede the person's ability to protect the interest; or
> (ii)    leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a).  The party raising a Rule 19 defense has the burden "to show that the absent party is needed for a just adjudication" of the case.  Romero, 368 F. Supp. 3d at 157.

"If the Court finds that the absent party is a required party, it must then determine whether joinder is feasible."  Id.  If the court finds that joinder is not feasible, the court must turn to Rule 19(b) to "determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."  Fed. R. Civ. P. 19(b).  "In other words, the Court must determine whether the absent party is 'indispensable' such that there can be 'no viable lawsuit without the missing party.'"  Romero, 368 F. Supp. 3d at 157 (quoting Picciotto v. Cont'l Cas. Co., 512 F. 3d 9, 20 (1st Cir. 2008)).  However, there is no need to consider Rule 19(b) if the court determines that the absent party is not required under Rule 19(a).  See id. at 160 (denying motion to dismiss for failure to join a party under Rule 19 based

[12]

solely on determination that absent party was "not a necessary party under Rule 19(a)"). Because this court finds that the defendants in the present action have failed to satisfy their burden of showing that the Tribal Entities are necessary or required parties under Rule 19(a), their motion to dismiss is denied.

### B. Application of Rule 19(a)

The first question to be addressed under Rule 19(a) is whether the court can provide the existing parties with "complete relief" in the absence of the Tribal Entities. Fed. R. Civ. P. 19(a)(1)(A). The defendants do not seriously dispute that this court can do so.[7] (See Def. Mem. (Docket No. 200) at 7-14). Therefore, this court turns to Fed. R. Civ. P. 19(a)(1)(B) and its two subparts.

The defendants assert that the circumstances of this case satisfy the first subpart of Rule 19(a)(1)(B).[8] As set forth above, that provision requires joinder where a party "claims an interest relating to the subject of the action and is so situated that disposing of the action in the [party's] absence may … as a practical matter impair or impede the [party's] ability to protect the interest[.]" Fed. R. Civ. P. 19(a)(1)(B)(i). For purposes of this Rule, "the issue is whether the

---

[7] In a footnote to their memorandum in support of their motion to dismiss, the defendants state, in passing, that the court cannot accord complete relief to the parties in Big Picture Loans' absence because "[a] 'court cannot adjudicate an attack on the terms of a negotiated agreement without jurisdiction over the parties to that agreement.'" (Def. Mem. at 9 n.4 (quoting Clinton v. Babbitt, 180 F.3d 1081, 1088 (9th Cir. 1999)). However, "arguments raised only in a footnote or in a perfunctory manner are waived." Nat'l Foreign Trade Council v. Natsios, 181 F.3d 38, 60 n.17 (1st Cir. 1999). Therefore, the defendants have not shown that Big Picture Loans is a necessary party under Fed. R. Civ. P. 19(a)(1)(A).

[8] The defendants do not contend that the Tribal Entities are required or necessary parties under the second subpart of Rule 19(a)(1)(B). (See Def. Mem. at 7-14). Therefore, this court has no occasion to consider whether disposing of the action in the Tribal Entities' absence might "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the [absent party's] interest." Fed. R. Civ. P. 19(a)(1)(B)(ii).

[13]

[Tribal Entities] claim an interest, not whether they have one." Commonwealth of Pennsylvania v. Think Finance, Inc., No. 14-cv-7139, 2016 WL 183289, at *5 (E.D. Pa. Jan. 14, 2016) (emphasis in original). This court finds that the Tribal Entities' decision to enter into a settlement with Duggan undermines any such claim.

"By entering into the Settlement Agreement and stipulating to their dismissal, the [Tribal Entities] cannot be said to 'claim[ ] an interest in the subject' of this action, as Rule 19(a)(1)(B) requires." Smith v. Martorello, No. 3:18-Cv-1651-AC, 2021 WL 5910652, at *2 (D. Or. Dec. 14, 2021). Moreover, a fundamental purpose of Fed. R. Civ. P. 19(a)(1)(B)(i) "is to protect the legitimate interests of absent parties[.]" U.S. ex rel. Morongo Band of Mission Indians v. Rose, 34 F.3d 901, 908 (9th Cir. 1994). See also Bacardi Int'l Ltd., 719 F.3d at 10 (noting that Rule 19(a)(1)(B)(i) "is concerned with protecting the interests of the absent party."). That concern is no longer present in this case because the Tribal Entities were already joined as defendants in this action and could have remained in the case to protect their interests. Instead, they chose to settle Duggan's claims against them. As described above, the Tribal Entities were aware at the time of the settlement that Duggan would continue to pursue this action against Martorello and Eventide. They even agreed to assist Duggan by providing material necessary to facilitate the distribution of funds to class members or effectuate a classwide settlement. (See Settlement Agreement ¶ 6.3). "Where a party is aware of an action and chooses not to claim an interest, the district court does not err by holding that joinder [is] unnecessary." Shropshire v. Canning, No. 10-CV-01941-LHK, 2012 WL 13658, at *5 (N.D. Cal. Jan. 4, 2012) (quoting Altmann v. Republic of Austria, 317 F.3d 954, 971 (9th Cir. 2002)) (internal quotations and alteration omitted). The Tribal Entities' settlement "is the best

evidence that [their] absence would not impair or impede [their] ability to protect [their] interests." Morongo Band of Mission Indians, 34 F.3d at 908.

Nevertheless, the defendants insist that proceeding without the Tribal Entities will impair the absent parties' interests in the Loan Agreements. (Def. Mem. at 7-11). In support of this argument, the defendants rely on the "well-settled proposition ... that a party to a contract which is the subject of the litigation is a necessary party." (Id. at 7-11 (quoting Downing v. Globe Direct LLC, 806 F. Supp. 2d 461, 466 (D. Mass. 2011) (internal quotations omitted)). The defendants are correct that "[a]s a general statement, it is well established that a party to a contract which is the subject of the litigation is considered a 'necessary' party." Plymouth Yongle Tape (Shanghai) Co., Ltd. v. Plymouth Rubber Co., LLC, 683 F. Supp. 2d 102, 113 (D. Mass. 2009) (quoting Blacksmith Invs., LLC v. Cives Steel Co., Inc., 228 F.R.D. 66, 74 (D. Mass. 2005)). "The rule, however, is not absolute." Id. This court finds that the general rule does not apply under the circumstances presented in this case.

In addition to the fact that the Tribal Entities chose to settle Duggan's claims rather than remain in this case and defend Duggan's challenge with respect to the Loan Agreements, "this is not an action to set aside a contract or for breach of contract[.]" Dillon v. BMO Harris Bank, N.A., 16 F. Supp. 3d 605, 612-13 (M.D.N.C. 2014) (finding that tribal entities that made loans to plaintiff over the internet were not required parties under Rule 19(a) where plaintiff's claims under RICO and usury laws challenging the validity of the loan agreements were "analogous to tort law" and did not allege breach of contract). Here, according to Duggan, the plaintiff has asserted that Martorello and Eventide have engaged in wrongdoing because of their status as non-tribal entities, and she "seeks declaratory relief about the application of the class action

[15]

waiver, forum selection, and choice of law provisions only in regard to their relevance and impact on this dispute with Defendants, who are not Tribe members, not named in the contract, and not third-party beneficiaries to the terms of the form loan agreement." (Duggan Opp. (Docket No. 204) at 13). Whether declaratory relief is warranted, or what would be the precise scope of such declaratory relief, should await the development of this case through discovery and relevant pleadings.[9] As presently plead, it does not appear that a judgment in Duggan's favor on her declaratory judgment claim would necessarily prohibit Big Picture Loans or the other Tribal Entities from carrying out their lending activities or collecting on their existing loans. The issue presented is whether such activities can be carried out by Martorello and Eventide, and whether these defendants can make use of the protections afforded to the Tribe under the Loan Agreements. (See Pl. Sur-Reply (Docket No. 219) at 8 ("Whether through declaratory relief or denial of Martorello & Eventide's affirmative defenses, the result is the same: the loan agreement does not apply to shield Martorello & Eventide from suit.")). Therefore, this case is distinguishable from cases on which the defendants rely where courts found that parties to a contract were necessary parties under Rule 19(a)(1)(B)(i) because the litigation could eliminate or invalidate the absent party's contract. See, e.g., Am. Greyhound Racing, Inc. v. Hull, 305 F.3d 1015, 1023 (9th Cir. 2002) (relied on by defendants) (finding that Indian tribes were necessary parties where district court's injunction required Governor to terminate state gaming compacts with tribes instead of renewing them); Downing v. Globe Direct LLC, 806 F. Supp. 2d 461, 467 (D. Mass. 2011) (relied on by defendants) (finding that

---

[9] The plaintiff has asserted that the same factual and legal issues are presented by the defendants' affirmative defenses and the plaintiff's request for declaratory relief. (See Pl. Sur-Reply (Docket No. 219) at 8). That issue does not need to be decided now.

Massachusetts, which was an obligee under a contract with the defendants, was a necessary party under Rule 19(a) where "any decision by [the] court would effectively invalidate Massachusetts's contract" and the "litigation would automatically terminate Massachusetts's contract."). The defendants have not shown that the Tribal Entities should be joined on this basis.

The defendants also argue that the Tribe is a necessary party because proceeding in its absence will impair its ability to protect its sovereign and economic interests. (Def. Mem. at 11-14). Thus, the defendants assert that "adjudicating the validity of tribal choice of law and forum selection provisions without the Tribe will impair its sovereign interests in making and enforcing its laws[.]" (Id. at 12). They also contend that the Tribe's economic interest in the continued operations of Big Picture Loans' lending operations, and the interest in avoiding a judgment that would negatively impact its lending business, further supports its status as a necessary party in this case. (Id. at 13-14). This court finds these arguments unpersuasive. The Tribal Entities' decision to settle Duggan's claims against them, instead of remaining in the case and defending those claims on the grounds of sovereign immunity, defeats the defendants' argument that litigating without them will impair or impede those parties' interests. As the District Court stated in Smith, "it is not for Martorello [or Eventide] to decide what infringes on a Tribe's sovereign immunity, when the Tribe and its affiliated entities have not elected to rely on that immunity." Smith, 2021 WL 5910652, at *3. The same holds true for the Tribe's economic interests. Accordingly, the defendants have not shown that the Tribal Entities are

[17]

necessary or required parties under Fed. R. Civ. P. 19(a), and their motion to dismiss under Rule 19 must be denied.[10]

## IV. CONCLUSION

For all the reasons detailed herein, the "Defendants' Motion to Dismiss Under Federal Rule of Civil Procedure 19" (Docket No. 199) is DENIED.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge

---

[10] In light of this court's conclusion that the defendants have not met their burden under Rule 19(a), the court will not reach the issue whether "in equity and good conscience, the action should proceed among the existing parties or should be dismissed" in the absence of a necessary or required party. Fed. R. Civ. P. 19(b). However, the Court acknowledges the defendants' argument that they will be prejudiced if the action is allowed to proceed since they will not be able to obtain discovery from the Tribe. (See Def. Mem. at 16-17). In light of the fact that the Tribal Entities did not elect to assert sovereign immunity in this case, it is not clear that they will not participate in discovery. In any event, any discovery disputes will be addressed if and when they occur, as will the ramifications of positions taken by the Tribal Entities if necessary.